**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Edward B. CROUSE, Defendant–
Appellant.**

No. 95–1189.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 1, 1995.

Decided March 18, 1996.

Rehearing and Suggestion for Rehearing
En Banc Denied April 30, 1996.

Brian K. Delaney, Office of U.S. Atty. for Western Dist. of Michigan, Grand Rapids, MI, Jay I. Bratt (argued and briefed), U.S. Dept. of Justice, Washington, DC, for U.S.

David A. Dodge (argued and briefed), David A. Dodge, P.C., Grand Rapids, MI, for Crouse.

Before: BOGGS and DAUGHTREY, Circuit Judges; MATIA, District Judge.*

* The Honorable Paul R. Matia, United States District Judge for the Northern District of Ohio, sitting by designation.

BOGGS, Circuit Judge.

This appeal arises from the conviction of Edward Crouse for the interstate shipment and sale of adulterated orange juice in violation of the Food Drug and Cosmetic Act, 21 U.S.C. § 341. Crouse is before this court for a second time alleging errors in the district court's efforts to sentence him. Because we believe that the sentencing issues were fully and fairly litigated in front of the district court in both the first and second sentencing hearings, and that the "new" evidence Crouse advances now is not so new, we conclude that the district court did not err by refusing to reopen several issues for further argument at the second sentencing hearing. Accordingly, we affirm Crouse's sentence.

I

The underlying facts leading to the conviction of Mr. Crouse for interstate shipment of adulterated orange juice are not in dispute in this appeal. These facts will not be discussed further, but can be found in *United States v. Kohlbach,* 38 F.3d 832 (6th Cir. 1994). Crouse pled guilty to causing the interstate shipment of adulterated orange juice, and the district court calculated his final offense level to be 19. *Id.* at 836–37. Because he had no prior convictions, the guidelines called for Crouse to be sentenced to between 30 and 37 months of imprisonment. The district court, however, granted Crouse's request for a substantial downward departure and reduced his sentencing range by 13 levels. The district court based its decision to depart downward on three factors: (1) Crouse's record of community service; (2) its desire to achieve proportionality in sentencing among the group responsible for the shipments; and (3) the extensive business losses that Crouse suffered as a result of his conviction. *Id.* at 837. The downward departure allowed the district court to sentence Crouse to probation, with a year of home confinement as a condition of the probation. *Id.* at 838.

The government appealed this downward departure, and Crouse cross-appealed the method by which the district court determined the amount of loss he caused for sentencing purposes. We heard both appeals.

In October 1994, we reversed the downward departure, but affirmed the district court's loss calculations as not clearly erroneous. *Id.* at 836–42. Crouse also moved for a rehearing, and rehearing *en banc,* and these were denied in December 1994.

The factual developments since Crouse's first appeal are quite limited, involving only the events of the re-sentencing hearing held on February 7, 1995. Crouse asked again to receive the community service departure, citing new evidence, and again challenged the loss calculations. Since Crouse began serving his one year of home confinement on December 1, 1993, and completed it on November 30, 1994, the court gave Crouse credit for the one year he had already spent under home confinement, departed downward by four levels, and sentenced Crouse to an additional 18 months imprisonment. Three areas of the resentencing record must be considered in this appeal.

First, Crouse submitted a sentencing memorandum that outlined several areas in which he requested the district court to revisit the factual and legal basis of his sentence. Crouse also asked to be allowed to present additional evidence at the resentencing to address the conclusions of the first appellate panel, especially with regard to the issue of departure for community service pursuant to USSG § 5H1.11. Finally, Crouse asked the district court to consider the effect of Amendment 508 to the sentencing guidelines, USSG App. C. para. 508. Amendment 508 was enacted after this court's decision in *Kohlbach* and addressed the interpretation that should be given to the phrase "not ordinarily relevant" in § 5H1.11 of the guidelines.

At the resentencing hearing, Crouse was allowed to present additional testimony regarding the nature of his community service work. Crouse presented testimony from four witnesses who were familiar with Crouse and his involvement in the community. The witnesses reinforced the fact that Crouse's contributions to numerous charitable and civic organizations were extensive both in time and intensity. The witnesses also tended to show that Crouse's volunteer

efforts began at a relatively young age, and at a time when he was not an elite executive. Finally, this testimony also suggested that Crouse's personal involvement was such that he was not merely donating funds or filling an honorary slot on the mastheads of various groups.

Crouse also included in his memorandum evidence concerning the duration and conditions of his home confinement during the appeals process, as well as the fact that he has paid in full the $250,000 fine imposed by the court.

The district court allowed Mr. Crouse to make this record at resentencing, yet concluded that such evidence was not sufficient to justify further modifications in Crouse's sentence. Citing the law of the case doctrine and the decision of the first appellate panel, the district court refused to allow additional argument concerning: (1) the reduction for community service; (2) the amount of loss calculations used to sentence Crouse; and (3) the effect of the new amendment to the sentencing guidelines. Because Crouse feels he was improperly denied another opportunity to argue these issues, he has appealed to us, seeking the remand of his case for a third sentencing hearing.

## II

■ Legal questions related to a district court's decision to depart from the sentencing guidelines are reviewed *de novo.* *United States v. Brewer,* 899 F.2d 503, 506 (6th Cir.), *cert. denied,* 498 U.S. 844, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990).

Crouse argues that the district court erred in applying the *Kohlbach* holding, because the court refused to consider whether Crouse's "expansion of the record" established that he was qualified for a departure based on community contributions. Crouse maintains that the district court interpreted *Kohlbach* as deciding that white collar defendants were *per se* barred from receiving sentencing departures based on community service. As a result of this understanding of *Kohlbach,* Crouse maintains, the district court failed to reconsider whether he was entitled to the community service departure

pursuant to USSG § 5H1.11, on the basis of his new evidence. The record does, in fact, support the conclusion that the district court understood *Kohlbach* as completely removing its ability to depart based on community service in this case involving white collar defendants.

■ The government argues at length that the revisitation urged by Crouse is inconsistent with the law of the case doctrine. The law of the case doctrine precludes revisitation of an issue where: (a) the issue was expressly or impliedly decided on appeal, or (b) the appellate court's mandate to the lower court is so narrow in scope as to preclude the district court from considering the issue. *United States v. Moored,* 38 F.3d 1419, 1421 (6th Cir.1994).

■ Crouse, however, contends, and we agree, that the law of the case doctrine does not directly apply to resentencing. In *United States v. Duso,* 42 F.3d 365 (6th Cir.1994), the court held that sentencing issues may be revisited *de novo* on remand from the court of appeals. *Duso* holds that a district court may revisit sentencing as it sees fit, as long as such revisitation is consistent with the appellate decision and mandate. In *Duso,* Judge Guy wrote:

> If the defendant convinces a court on appeal that the sentence was wrongly computed and the court remands for resentencing, there appears to be no prohibition in the guidelines, or in the case law interpreting the guidelines, keeping a district judge from revisiting the entire sentencing procedure unless restricted by the remand order. It is possible, as occurs in many cases, that the remand would be a limited one which would not allow the district judge to make a *de novo* review of the sentencing procedure. In this case, however, there was no such language in the opinion limiting the district judge's review.

*Id.* at 368.

The government's counter-argument concerning *de novo* resentencing and *Duso* is not compelling. The government contends that "[b]ecause the district judge [in Duso] had made a clear error at the original sentencing, *Duso* falls squarely within the third

*Moored* exception to the law of the case doctrine." *Ibid.* There is nothing in the language of *Duso* cited above to suggest that its rule is limited to revisitation to correct clear error. *Duso* is therefore not a modification of *Moored,* but a separate rule applicable only to resentencing hearings allowing a district court to revisit sentencing issues on a *de novo* basis, as long as it remains consistent with the appellate mandate. As an appellate court, we correct errors of law, but do not remove all discretion and judgment from a district court. *Duso,* however, does not necessarily *require* revisitation in the Crouse matter.

■ To the contrary, we hold here that although the district court could have revisited the issue of departure for community service, its failure to do so in Crouse's case does not constitute reversible error because of our previous holding in *Kohlbach.* In *Kohlbach,* we explained forcefully that white-collar executives such as Crouse generally could not qualify for the community service departure even in light of extensive community service work. *Kohlbach,* 38 F.3d at 838–39. The basis for our reasoning was that corporate executives are commonly involved with community service and that the guidelines already take into account the nature of white collar crime and reward individuals who have previously led crime-free lives. *Id.* at 839. Although the district court here may have acted on an overly broad interpretation of *Kohlbach* (we can conceive of some situations in which a corporate executive could qualify for the community service reduction), the court was basically correct when it concluded that *Kohlbach* meant that Crouse, specifically, would not qualify for the reduction, based on the type of evidence before the court.

Crouse's initial effort to show that he performed significant community service was impressive, yet did not establish that he performed such quantity or quality of work as to set himself apart drastically from other similarly situated perpetrators. We have taken notice of Crouse's efforts to augment the record in this area, and remain convinced that the district court could reasonably invoke our decision in *Kohlbach* as foreclosing the need for further argument in this area.

While *Duso* may hold that Crouse could receive *de novo* resentencing, our mandate in *Kohlbach* was specific enough that the district court could reasonably conclude that Crouse would not qualify for the community service reduction. Even after the district court let Crouse put on additional testimony concerning his community service, it was and is still evident that he did not qualify for the reduction under the *Kohlbach* reasoning.

Although we noted the unfairness of a white collar defendant's getting "checkbook justice," by spending money or otherwise making token efforts at community service, the heart of our reasoning was that (a) departures such as this require *very* unusual circumstances, and (b) it is not unusual for white collar executives to have a record of substantial community contributions because such activities are part-and-parcel of their positions, and the qualities that lead to an executive position are often those that also lead to useful community activity.

Crouse's new testimony tends to reflect that his community service was above average even for a corporate executive. We do not think, however, that this testimony adds much to what the trial court and first appellate panel knew about Crouse.[1] We need not set a specific standard for how far above average an executive's community service must be to qualify for this departure, but can say with confidence that Crouse's community service resumé strikes us as not highly unusual for a person in his position. We acknowledge that the additional testimony established that Crouse undertook community service efforts at a relatively young age, and before he was an executive. We also acknowledge the fact that the testimony elevates him above the class of executives who donate only money, or lend only their name to a masthead. In the final analysis, however, we must be content to thank him for his generous efforts, but conclude that they are

---

1. We also have a hard time understanding how, in light of our first opinion, Crouse can now find even more testimony to establish an even greater magnitude of community service. Holding back the extent of his services at the initial sentencing would serve no purpose, save possibly modesty.

not sufficient to allow him to serve less time for the offense that he has committed.

### III

■ Crouse also argues that an intervening amendment to the Sentencing Guidelines, Amendment 508, which went into effect after the *Kohlbach* decision, provided a grounds for departure that was rejected erroneously by the trial court. Amendment 508 adds the following paragraph to § 5K2.0, as well as additional commentary before and after the rule itself:

> An offender characteristic or other circumstance that is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range may be relevant to this determination if such characteristic or circumstance is present to an unusual degree and distinguishes the case from the "heartland" cases covered by the guidelines in a way that is important to the statutory purposes of sentencing.

USSG App. C., para. 508. Crouse maintains that this amendment changes the law controlling the issue of when departure for unusual circumstances is warranted, and that it applies to him because it took effect during the pendency of his direct appeal, pursuant to *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).

We believe it is unlikely, however, that this amendment would have led to any different result given the clarity and forcefulness of the *Kohlbach* decision. In *Kohlbach*, we decided there was not an unusual circumstance warranting departure, and the amendment and commentary seem to support this conclusion because they emphasize how rare such circumstances are. Crouse's argument is that the amendment could change this result, because the amendment says the circumstances are *rare*, therefore implying they do occur, contradicting the view that white-collar executives can *never* have qualifying community service. The *Kohlbach* court did not say that circumstances involving community service could never exist in such a way as to justify departure. Rather, *Kohlbach* holds that white collar executives must show that their community service was unusual based upon an expectation that such individuals would have engaged in a significant amount of such service. Amendment 508 in no way raises any questions about this result, and could not have been used in good faith by the district court to avoid the conclusion drawn in *Kohlbach,* that Crouse's community service was not sufficiently unusual to warrant departure. As a result, the court's refusal to revisit the community service issue on the basis of this amendment was not error and in no way prejudiced Crouse.

### IV

■ Finally, Crouse maintains that the district court's refusal to revisit the formula by which the loss attributable to Crouse was calculated constitutes error because the district court explained that it was legally precluded from such reconsideration. Again, under *Duso,* the district court is not so precluded, except to the extent that such revisitation conflicts with the appellate decision. Since the *Kohlbach* court reviewed the district court's method of computing loss for clear error, *Kohlbach,* 38 F.3d at 841, there was less danger that revisiting the loss issue could violate our specific holding that the previous ruling was within the court's discretion. Crouse submitted no new evidence on this issue, yet apparently hoped to convince the district court to adopt another formula for calculating loss.

■ While we agree that the district court erroneously concluded that it could not reopen this issue, we cannot agree that this amounts to an error that requires remand. This issue was fully and fairly litigated at the original trial, and was subject to appellate review during Crouse's first appeal. Crouse thus cannot claim that he has been denied his day in court on this issue. Crouse offers no reasoning, other than the arguments he made at these first two airings of this issue, why the district court might change its mind, or how the refusal to revisit has prejudiced him. In short, Crouse simply desires another chance to make the same arguments, and is upset that he was denied this chance because of the district court's misapprehension of the law governing resentencing. Without any showing of prejudice or any other com-

pelling reason why revisitation is necessary to effect justice, we believe the district court's mistaken justification for refusing revisitation constitutes harmless error. We therefore refuse to remand for further resentencing.

### V

There comes a point in most cases where the relevant facts and legal positions are fully developed for the court, and beyond which further evidence and argument is an unprofitable investment. That point was reached in this case after the first appeal, when the district court was left with the administrative task of re-calculating Crouse's sentence. To turn such a task into an effort to re-litigate any of the closely-fought issues decided earlier by the district court, without substantially new evidence or argument, is contrary not necessarily to caselaw, but rather to common sense and the need for judicial economy. As the district court, in exasperation, explained at the resentencing, "none of this is new." Accordingly, we AFFIRM the decision of the district court in all respects.