**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Carl JENNINGS (95–3317); John Stepp (95–3318), Defendants–Appellants.**

Nos. 95–3317, 95–3318.

United States Court of Appeals,
Sixth Circuit.

Argued March 25, 1996.

Decided May 8, 1996.

Vicki S. Marani (argued and briefed), Dept. of Justice, Crim. Div. Appellate Section, Washington, DC, for U.S.

Barry W. Wilford (argued and briefed), Columbus, Oh, for Carl Jennings.

Dennis C. Belli (argued and briefed), Columbus, OH, for John Stepp.

Before: KENNEDY and MOORE, Circuit Judges; WELLS,* District Judge.

KENNEDY, Circuit Judge.

Defendants appeal their convictions and sentences which followed indictments charging a conspiracy to manufacture methamphetamine in violation of 21 U.S.C. § 846 (count one), possession of over one hundred grams of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (count two), and endangerment of human life

---

* The Honorable Lesley Brooks Wells, United States District Judge for the Northern District of Ohio, sitting by designation.

while manufacturing methamphetamine, in violation of 21 U.S.C. § 858 (count four).[1] Defendants raise six arguments on appeal: one concerns the District Court's denial of defendants' motions for substitution of counsel and the other five concern sentencing issues. For the following reasons, we **AFFIRM** in part, **REVERSE** in part, and **REMAND** for proceedings pursuant to instructions.

## I.

Soon after midnight, in the early hours of September 6, 1989, federal law enforcement agents (from the Drug Enforcement Agency, or "DEA") converged on the home of Luanne Dennis in Columbus, Ohio, where they found a crude but operational methamphetamine production lab.[2] The agents had been closely monitoring the activities of defendants Jennings and Stepp with the assistance of government informant, Robert Green. In fact, it was Green who, with DEA approval, supplied the defendants with red phosphorus and ephedrine, ingredients essential to the manufacture of methamphetamine.

DEA officers found methamphetamine ingredients, the necessary apparatus for methamphetamine production, and a three-quart Crockpot of heated red liquid, a substance from which methamphetamine is extracted. They arrested defendants and turned off the Crockpot but the DEA forensic chemist did not take samples of Crockpot contents until several hours later.

Because of the delay in acquiring samples from the Crockpot, any estimate as to what percentage of the brew was methamphetamine at the moment of arrest would have to be approximate. Nevertheless, the government offered expert testimony to establish that some methamphetamine had in fact been produced by the time of the DEA raid, a finding with which the defense expert agreed. (The production process generally takes about twelve hours and the chemicals had been "cooking" for almost seven hours prior to seizure.)

Prior to trial, defendants were appointed counsel. About two months before trial, defendant Jennings expressed frustration at the limited contact he had with his attorney in a letter to the District Court. Then, on the day before trial, for the first time, defendants both moved for substitution of counsel. Their motions were denied.

A jury convicted defendants of one count of conspiring to manufacture and to possess with intent to distribute over 100 grams of methamphetamine, one count of possessing over 100 grams of methamphetamine with intent to distribute, and one count of endangering human life while manufacturing methamphetamine. Defendant Jennings was also convicted on one count of maintaining a place for the purpose of manufacturing and using methamphetamine, one count of distributing cocaine, and one count of distributing methamphetamine.

Pursuant to the sentencing guidelines, the District Court determined defendants' offense levels on the basis of drug quantities involved in the case. In fixing the drug quantity, the District Court equated the total weight of Crockpot contents with the relevant drug quantity. Accordingly, Jennings received concurrent prison terms of 293 months on counts one and two, 240 on counts three, five, and six, and 120 on count four, followed by five years of supervised release. Stepp received concurrent prison terms of 235 months on counts one and two, and 120 months on count four, followed by five years of supervised release.

Defendants argued in the first appeal that the District Court erred in failing to grant defendants' motions for substitution of counsel and that their sentences were improperly determined when the District Court computed their base offense level by weighing the total amount of the Crockpot mixture. *See*

---

1. Defendant Jennings was also convicted of maintaining a place for the purpose of manufacturing and using methamphetamine, in violation of 21 U.S.C. § 856(a)(1) (count three, of which Stepp was acquitted), distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) (count five), and distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (count six).

2. Luanne Dennis was the girlfriend of defendant Jennings and was a witness in this case.

*United States v. Jennings,* 945 F.2d 129, 135 (6th Cir.1991).

We held that the District Court erred by not adequately inquiring into the cause of defendants' motions for new counsel and remanded with instructions to give the defendants the opportunity to show good cause for their motions to substitute counsel. Furthermore, we held that the District Court erred in including measurement of the entire contents of the Crockpot in its sentencing calculation and remanded for an evidentiary hearing on the capability of methamphetamine production from the contents of the Crockpot for the purpose of resentencing. *Jennings,* 945 F.2d at 136–37.

On remand, the District Court held the instructed hearings and concluded that defendants failed to show good cause for their motions to substitute counsel and that the defendants were capable of producing 210 grams of methamphetamine, a figure from which the defendants' base offense level was then recalculated. Stepp was then sentenced on Counts 1, 2, and 4 to 137 months, to run concurrently. Jennings received a sentence of 235 months for Counts 1,2,3,5, and 6, and 135 months on Count 4, to run concurrently.

Defendants appeal the District Court's conclusions both as to their motions to substitute counsel and as to the estimate of their drug producing capability. In addition, defendant Jennings appeals the District Court's refusal to review the presentencing report's relevant conduct section following the remand; defendants appeal the District Court's upward departure from the sentencing guidelines for significantly endangering public health and safety and the District Court's failure to depart downward for "sentencing entrapment;" and, finally, defendants appeal the District Court's sentence in excess of statutory authority on Count 4.

## II.

### A. The Good Cause Hearing Regarding Defendants' Motions for Substitution of Counsel

■ Defendants argue that the District Court abused its discretion when, on remand, it found that defendants failed to establish good cause for their motions for substitution of counsel.

In reviewing whether a district court abused its discretion in denying a defendant's motion to substitute counsel, appellate courts generally consider the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense. Further, consideration of such motions requires a balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice.

*United States v. Iles,* 906 F.2d 1122, 1130 n. 8 (6th Cir.1990) (citations and internal quotations omitted).

We agree with the District Court that the factor of timeliness does not count favorably for defendants. They moved for substitution of counsel on the day before trial for the first time. Defendant Jennings counters that he had notified the court of his dissatisfaction with counsel ten weeks earlier through a letter sent to the District Court. First, we note that this letter is irrelevant with respect to defendant Stepp's claim. Furthermore, the timeliness to be considered is "timeliness *of the motion.*" We do not see Jennings' letter as notifying the court of a desire for new counsel, even construing it liberally as required of *pro se* motions. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972). Far from asking for new counsel, defendant Jennings' letter to the District Court strives for greater contact with his attorney. Thus, the District Court accurately fixed the time of the motion as the day before trial and did not abuse its discretion in finding this factor unsupportive of defendants' motions. Defendants correctly point out that timing of such a motion is not, by itself, justification for denial of good cause. Appellant Jennings' Brief at 17 (citing *United States v. Lillie,* 989 F.2d 1054 (9th Cir.1993)). It remains, however, a factor not in their favor.

With regard to the second factor, defendant Jennings concedes that the District

Court's hearing on remand was a thorough inquiry into the surrounding facts and thus, that the second factor was, at best, "neutral" with respect to defendants' claims. *See*, Defendant Jennings' Brief at 19; Government's Brief at 14–20 (summarizing proceedings).[3]

Finally, we do not find that the District Court abused its discretion as to its determination of the third factor, whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense. The District Court found "lack of communication did not arise in this case."

Certainly the record evidences some dissatisfaction with counsel. Defendants did petition the District Court to dismiss counsel. But the third *Iles* factor requires a showing of more than communication with counsel which the defendant feels is unsatisfactory. Rather it requires a showing that "the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense." Defendants failed to prove that such a complete communication breakdown existed.

In fact, as referred to previously, Jennings' November letter cuts against him on this issue. Although the letter complains of the lack of communication, it expresses a desire for more communication, complaining that "[a]t the present time my attorney has not come to see me once. I seen him in court and talk to him twice on the phone.... I know this is a matter I should talk to my attorney about." Furthermore, defendant's wishes for more communication with counsel were met, following Jennings' letter; defendants met with counsel repeatedly between the sending of Jennings' letter and trial.

Clearly, communication between client and counsel fell short of defendants' expectations. Nevertheless, we conclude that the District Court did not abuse its discretion in concluding that good cause for substitution of counsel did not exist in this case.

## B. The Determination of Approximate Quantity of Methamphetamine for the Purpose of Determining Defendants' Base Offense Levels

Defendants argue that the District Court was clearly erroneous in its calculation of the total quantity of drugs attributable to the conspiracy. Furthermore, defendant Stepp contends that the District Court erred by holding him accountable for the entire amount of methamphetamine attributable to the conspiracy.

 We review the District Court's determination of drug quantity for clear error. *United States v. Mahaffey*, 53 F.3d 128, 131 (6th Cir.1995). The quantity of drugs must be established by a preponderance of the evidence. *United States v. Moss*, 9 F.3d 543, 552 (6th Cir.1993). When precise measurement of the drugs is impossible, as in this case, the sentencing court must approximate the amount charged to defendants. *Mahaffey*, 53 F.3d at 131. A court's approximation of the amount of drugs involved is not clearly erroneous if supported by "competent evidence in the record." *Mahaffey*, 53 F.3d at 132 (citing *United States v. Brannon*, 7 F.3d 516, 520 (6th Cir.1993)).

 The contents of the Crockpot, from which defendants planned to manufacture methamphetamine, weighed 4180 grams. The government offered evidence through forensic chemist Skowronski that the mixture, had defendants been allowed to complete the manufacturing process, would have yielded approximately 250 grams of methamphetamine. The chemist based his calculation on the conversion of sixty percent of the ingredient ephedrine, by weight, processed into methamphetamine. He arrived at the

---

**3.** Defendant Stepp, on the other hand, made no such concession. He avoided discussion of *Iles* factors entirely. Rather, Stepp, on appeal, lists numerous instances in which his trial counsel allegedly acted against his client's wishes with regard to litigation strategy. He cites his attorney's failure to (1) subpoena and interview numerous potential witnesses, (2) to investigate certain physical and scientific evidence, (3) to file a motion to sever co-defendants' trial, (4) to protect defendant's right to a speedy trial, (5) to adequately consult with his client, and finally, his failure (6) to employ a defense expert. Defendant Stepp's Brief at 10–23. Stepp's allegations, even if true, do not establish that the District Court abused its discretion by finding that Stepp failed to establish good cause in his motion for substitute counsel. They fail to address the first two *Iles* factors completely and do not amount to persuasive evidence of the third factor.

figure of sixty percent based upon studies of other scientists suggesting clandestine lab yields of fifty to seventy-six percent of ephedrine and following consultation with other scientists "at a couple of different laboratories."[4] The District Court employed the lowest estimate, a fifty percent yield.

In rebuttal, defendants adduced testimony from Dr. Hans Zimmer, a professor of chemistry at the University of Cincinnati. He testified to the futility of trying to estimate the producible amount of methamphetamine by replication of laboratory conditions under such circumstances as existed in this case. The sloppiness of clandestine labs and the "operators" that run them thwart attempts to reproduce results. More specifically, unknowable variables include precise quantities of ingredients used, purity of ingredients, quality of equipment, precise measurement of timing, and "the skill of the operators."

Although defense expert questioned the feasibility of *any* prediction, he stated unequivocally that *some* methamphetamine had been produced by defendants. Our inquiry, therefore, is whether the estimate on which the District Court relied was supported by "competent evidence in the record." *Mahaffey*, 53 F.3d at 132 (citing *United States v. Brannon*, 7 F.3d 516, 520 (6th Cir.1993)).

The District Court's approximation of the amount of drugs involved in this case was supported by expert testimony which was in turn based upon first-hand knowledge of the facts of this case, upon laboratory tests of the contents of the Crockpot, and upon consultation with other experts and scientific texts. Such evidence is clearly competent. Defendants' reliance on *Mahaffey* to argue otherwise is misplaced. In that case, we found that the District Court erroneously applied a fifty percent conversion formula (concerning conversion of ephedrine into methcathinone) without adequate factual inquiry into the immediate circumstances in the case before it. *Mahaffey*, 53 F.3d at 132. The District

Court in *Mahaffey* based its approximation on a record that had "no witnesses and ... no affidavits of experts who were familiar with the size and capabilities of the laboratories involved." *Id.*

Defendants' objection to the District Court's estimate of drug quantity involved in this case, is therefore meritless. The objection nevertheless highlights a troubling aspect of current sentencing procedure in that the sentencing court's estimate is dependent on factors which defy precise calculation. We are mindful of the risk posed by such imprecision, however, and we have emphasized that the sentencing court "should err on the side of caution." *Mahaffey*, 53 F.3d at 131 (citing *United States v. Meacham*, 27 F.3d 214, 216 (6th Cir.1994)). In this case, the District Court did just that, using the government expert's lowest estimate for conversion percentages of clandestine laboratories. The District Court was not clearly erroneous in having done so.

■■■ With regard to Stepp's contention that the District Court erroneously held him accountable for the entire amount of methamphetamine attributable to the conspiracy,

> a defendant may be sentenced based upon quantities of drugs attributable to other members of a conspiracy, provided the district court finds that those quantities were known to defendant or were reasonably foreseeable to him.

*Moss*, 9 F.3d at 552.

We have previously found that Stepp was a willful member of this conspiracy to manufacture and sell methamphetamine. "[T]he record establishes that Stepp helped locate and obtain the necessary chemicals. In addition, Stepp was present and aided in the actual manufacture of the drug." *Jennings*, 945 F.2d at 133. Given these facts, we cannot conclude that the District Court erred in attributing to him the full amount of methamphetamine.

4. Although Dr. Skowronski did not cite any specific study, cross-examination of defense expert Dr. Hans Zimmer included discussion of an article in the publication *Forensic Science International*, "Methamphetamine Synthesis Via Hydriodic Acid/Red Phosphorous Reduction of Ephedrine," which, the record suggests, estimated clandestine lab yields of fifty to seventy-five percent by weight of ephedrine. *See United States v. Silverman*, 976 F.2d 1502, 1510–11 (6th Cir.1992) (*en banc*), *cert. denied*, 507 U.S. 990, 113 S.Ct. 1595, 123 L.Ed.2d 159 (1993) (hearsay may be admissible at sentencing).

## C. The District Court's Consideration of Relevant Conduct at Defendant Jennings' Resentencing

■ Following defendant's conviction, a presentence report was prepared for the purpose of determining defendant's sentence. Included in the report was evidence of relevant conduct concerning the manufacture and possession of illegal drugs at a time prior to the charged conduct in this case. The application of relevant conduct to the base offense level warranted no increase in the base offense level, the presentence report concluded.

Defendant apparently conveyed objections to findings in the relevant conduct section of the original presentence report to his counsel, but counsel never forwarded these objections to the probation department or the Court. Jennings' counsel may well have been influenced by the fact that the relevant conduct had no effect on his client's base offense level. The District Court made a generalized finding that the allegations in the report were true.

On remand, because of the adjustment to defendant's base offense level on account of recalculation of drug quantity, the relevant conduct was now of considerable consequence, raising Jennings' offense level from twenty-four to twenty-eight. Thus, upon remand, defendant objected to the relevant conduct section of his supplemental presentencing report even though that section was identical in the original presentencing report to which he had not previously objected.

At the sentencing hearing the District Court found these objections "outside the scope of the issues before [the] Court on remand." Appellant Jennings' Brief at 25.[5] The Court held that "Defendants' objections to the supplemental presentence investigation report shall be strictly limited to the issue on remand."

■ Jennings relies on *United States v. Moored,* 38 F.3d 1419 (6th Cir.1994), for the proposition that "the District Court may revisit other findings relating to the previous sentencing proceedings, and reverse its prior findings." Case law subsequent to *Moored* is even more favorable to defendant Jennings. *See United States v. Duso,* 42 F.3d 365 (6th Cir.1994); *United States v. Crouse,* 78 F.3d 1097 (6th Cir.1996). On remand, the only constraint under which the District Court must operate, for the purposes of resentencing, is the remand order itself. Where the remand does not limit the District Court's review, sentencing is to be *de novo.* The District Court erred in refusing to consider Jennings' objections to the relevant conduct section of his supplemental presentence report.

Such a rule is particularly compelling given the facts of this case. At the original sentencing, the relevant conduct was *irrelevant* to the determination of defendant's base offense level. Were we to establish a rule precluding subsequent inquiry upon remand into such findings, then defendants would be forced to litigate every aspect of the sentencing report in the original hearing, even though irrelevant to the immediate sentencing determination in anticipation of the possibility that, upon remand, the issue might be relevant. Such "front-loading" would unnecessarily increase the burden on district courts and this court. In the interest of judicial economy it will not be required.

## D. Sentencing for Count 4 (21 U.S.C. § 858): Endangering Human Life while Illegally Manufacturing a Controlled Substance

■ Defendants object to the District Court's "upward departure" for endangerment to public welfare pursuant to U.S.S.G. § 5K2.14. The District Court's "upward departure" was, in fact, an attempt to determine a correct sentence for defendants on Count 4 for which, at the time of defendants'

---

5. Actually, the District Court appears to have had a look at the merits of defendant's claims on remand. *See* JA at 847 ("[T]he Court will consider those, those pro se objections [to the relevant conduct section of the original presentence report]."); JA at 857 ("[A]ll of defendants' pro se objections fall into one of two categories: objec-

tions already raised and argued by counsel, and objections that fall outside of the scope of the issues before this Court on remand.") Nevertheless, the Court held that some of the objections were "beyond the scope" and we must thus consider the propriety of that decision.

underlying criminal acts, there was no sentencing guideline. Although we find the District Court's language to have been somewhat confusing, we find the District Court's actions to have been within its discretion.[6]

Defendants committed the charged offenses between July and October of 1989 but the guideline for 21 U.S.C. § 858 only became effective on November 1, 1989. *See* U.S.S.G. § 2D1.10. Due to concern for the defendants' constitutional rights to be free from *ex post facto* laws, U.S. Const. Art. 1, § 9, cl.3, the District Court declined to apply the newly established guideline which would have "guided" the Court to add 3 to the defendants' base offense levels. No one objected to this decision either before the District Court or on appeal although the issue was highlighted following defendants' first appeal. *United States v. Jennings*, 966 F.2d 184 (6th Cir.1992).

The court decided on a two point increase to defendants' offense levels as an appropriate sentence for the separate crime charged in count 4, using the unfortunate language that "an upward departure of two levels is warranted on the basis of the dangerousness of defendants' conduct . . . ."

The judge's only constraints under the 1987 guidelines were the ten year statutory maximum and the parameters of 18 U.S.C. § 3553(a)(2)(A)-(D). Under such circumstances, the sentencing judge had broad discretion with regard to defendants' sentences. In the absence of a guideline, Congress instructs the sentencing court to consider the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence to reflect the seriousness of the offense, to provide adequate deterrence, to protect the public from future crimes of the defendant, and to provide defendant with the most effective rehabilitative services. *See* 18 U.S.C. § 3553(a). We therefore essentially review for reasonableness and conclude that, in spite of the District Court's ill-chosen use of the phrase "upward departure," District Court's addition of 2 to defendants' offense levels for violation of 21 U.S.C. § 858 was well within the District Court's discretion.

Although we affirm the District Court's two level increase in defendants' base offense levels, we must nevertheless remand for resentencing on count 4 because the judgments for defendants Jennings and Stepp reflect sentences of 135 and 137 months, respectively, for count 4. As the government concedes, these sentences are in excess of the 120 month statutory maximum and must be vacated.

**E. The District Court's Refusal to Downwardly Depart from the Sentencing Guidelines due to Sentencing Factor Manipulation by the Government**

A district court's failure to depart from the Guidelines range is not cognizable on appeal under 18 U.S.C. § 3742(a) when the district court properly computes the Guidelines range, imposes a sentence that is not illegal or did not result from an

---

**6.** We analyze upward departures from sentencing guidelines pursuant to three part test: (1) we assay the circumstances relied on by the District Court in determining that the case was sufficiently "unusual" to warrant departure, (2) we consider whether there was a factual basis from which to infer the existence of the "unusual" element(s), and (3) having established sufficiently "unusual" circumstances for which there is a factual basis, we consider the reasonableness of the degree of departure. *United States v. McDowell*, 902 F.2d 451, 455 (6th Cir.1990).

In determining whether the circumstances of the case were sufficiently unusual to warrant departure, we employ a "heartland" analysis. *See McDowell*, 902 F.2d at 455 (citing *United States v. Aguilar–Pena*, 887 F.2d 347, 349 (1st Cir.1989)); U.S.S.G. § 1A.4(b). That is, we look to the facts of the case to determine whether there is anything " 'special' about a given offend-

er, or the accouterments of the crime committed, which distinguishes the case from the mine-run for that offense." *Id.* We fail to see such "specialness" in the facts of this case. All facts but one cited by the government to support a finding of such "special" circumstances are facts inherent to the charged offenses. The manufacture of methamphetamine always includes use of dangerously toxic chemicals. The sole factor in this case which is not universal to any conviction on similar charges is that the place of drug manufacturing was "in a common subdivision." Because we conclude, however, that the District Court's action in this case were not truly an upward departure but rather sentencing for 21 U.S.C. § 858 for which the 1987 Sentencing Guidelines afforded no guideline, the absence of sufficiently "unusual" circumstances does not end our inquiry into the District Court's sentencing determination for Count 4.

incorrect application of the Guidelines range, and is not unaware that it had discretion to depart from the Guidelines range.

*United States v. Brannon,* 7 F.3d 516, 521–22 (6th Cir.1993).

■ Defendants argue that the District Court "denied a downward departure, at least in part, on the basis that it did not believe it had authority to depart...." Defendant Stepp's Brief at 44. The record is to the contrary. Defendants moved for a downward departure based on a theory of "sentencing entrapment." The District Court, in response, found facts in the record which it determined militated against a downward departure. Having responded to defendants' motion by reference to countervailing facts implicitly acknowledges discretion to depart from the Guidelines. Thus, the District Court's failure to depart downward in light of "sentencing entrapment" is unappealable.

### III.

For the foregoing reasons, we **AFFIRM** in part, **REVERSE** in part, and **REMAND** for proceedings consistent with this opinion.