[Cite as *State v. Charleston*, 2026-Ohio-2103.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 30566 |
| Appellee | : | |
| | : | Trial Court Case No. 2025 CRB 00287 |
| v. | : | W |
| | : | |
| ZION CHARLESTON | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on June 5, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

*Christopher B. Epley*

_____
CHRISTOPHER B. EPLEY, JUDGE

TUCKER, J., and HUFFMAN, J., concur.

ANDREW S. POLLIS, Attorney for Appellant
TERRY W. POSEY, SR., Attorney for Appellee

EPLEY, J.

{¶ 1} Zion Charleston appeals his conviction in the Montgomery County Municipal Court of one count of misdemeanor domestic violence. Charleston contends that although his sentence has expired, his appeal is not moot because the conviction carries a collateral legal disability. Charleston further asserts that the trial court erred by denying his oral motion for a new attorney without providing him with sufficient opportunity to explain the basis of his motion. For the following reasons, the trial court's judgment is affirmed.

**I. Facts and Procedural History**

{¶ 2} On April 25, 2025, Charleston was charged with one count of domestic violence following an altercation with his child's mother, J.A. The trial court issued an ex parte domestic violence protection order for J.A. on April 29, 2025. A warrant was issued for Charleston's arrest, and he was apprehended on June 30, 2025. A bench trial was held on July 16, 2025, approximately two weeks later.

{¶ 3} During the bench trial, J.A. was the first witness called to testify. However, during her testimony, Charleston informed his attorney that he wanted new counsel. The trial court stopped the proceedings and inquired as to the basis of Charleston's request. Charleston told the trial court that he did not feel his attorney talked with him enough prior to trial and he did not feel his attorney was prepared to represent him. The trial court addressed Charleston's attorney, and counsel explained that he had met with Charleston on two prior occasions. He and Charleston discussed the facts of the case, as well as the

plea offer made by the State, and he asked Charleston if there were any additional witnesses he should interview. Although Charleston informed his attorney about text messages that he believed could help his case, his counsel stated that the text messages at issue were not relevant to the instant matter.

{¶ 4} Ultimately, the trial court overruled Charleston's request for new counsel, noting that Charleston did not have a statutory or constitutional right to a second appointed attorney and that the request was untimely. The trial court further stated that jeopardy had attached and Charleston's counsel was a seasoned attorney with significant experience, so the court did not believe that there was any issue with his preparedness to represent Charleston. The trial proceeded, and the trial court ultimately found Charleston guilty of domestic violence. He was sentenced to 180 days in jail, with credit for 20 days of time served. Although Charleston is currently incarcerated, the sentence is for unrelated charges, and his sentence in this case expired on December 23, 2025.

{¶ 5} On August 4, 2025, Charleston filed a notice of appeal. On January 13, 2026, the State filed a motion to dismiss the appeal, which argued that the appeal was moot based on the expiration of Charleston's sentence and the absence of collateral consequences. Charleston opposed the motion to dismiss on January 30, 2026, and we overruled it on February 9, 2026, stating that the arguments regarding mootness may be addressed in the parties' briefs.

{¶ 6} In his brief, Charleston asserts that his appeal is not moot due to the imposition of collateral legal consequences, including the federal firearm restriction imposed under 18 U.S.C. 922(g)(9). As for the merits of the appeal, Charleston raises one assignment of error.

3

## II. Mootness

**{¶ 7}** "The role of courts is to decide adversarial legal cases and to issue judgments that can be carried into effect." *Cyran v. Cyran*, 2018-Ohio-24, ¶ 9, citing *Fortner v. Thomas*, 22 Ohio St.2d 13, 14 (1970); *State v. Smith*, 2019-Ohio-3592, ¶ 8 (2d Dist.). Under the mootness doctrine, this court will not decide a case where an actual legal controversy no longer exists between the parties. *Cyran* at ¶ 9, citing *In re A.G.*, 2014-Ohio-2597, ¶ 37. "Issues are moot when they lack practical significance and, instead, present academic or hypothetical questions." *Dibert v. Carpenter*, 2018-Ohio-1054, ¶ 30 (2d Dist.), citing *State ex rel. Ford v. Ruehlman*, 2016-Ohio-3529, ¶ 55.

**{¶ 8}** However, we have held that "several limited exceptions to the mootness doctrine exist whereby a court may entertain jurisdiction in order to consider the issue." *Brown v. Dayton*, 2012-Ohio-3493, ¶ 11 (2d Dist.). One such exception is the existence of collateral consequences, and "[i]n assessing collateral consequences questions, courts must highlight the fine line which distinguishes pure speculation from reasonably possible adverse scenarios." *Id.* at ¶ 13. "'A collateral disability must be a substantial, individualized impairment . . . .'" *Cyran v. Cyran*, 2016-Ohio-7323, ¶ 7 (2d Dist.), quoting *In re A.J.*, 2014-Ohio-5566, ¶ 7 (1st Dist.). "[I]n the absence of demonstrated legal collateral consequences, the collateral consequences exception to the mootness doctrine does not apply." *Cyran*, 2018-Ohio-24, at ¶ 7. "Speculation is insufficient to establish a legally cognizable interest for which a court can order relief using the collateral-consequences exception to the mootness doctrine." *Id.* at ¶ 11.

**{¶ 9}** The first collateral consequence Charleston claims to have suffered is the federal firearm restriction under 18 U.S.C. 922(g)(9), which states: "[I]t shall be unlawful for any person who has been convicted in any court of a misdemeanor crime of domestic

4

violence to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." Charleston notes that this restriction burdens him with the loss of his right to bear arms under the Second Amendment, irrespective of whether he actually plans to exercise that right in the future.

{¶ 10} Although the Ohio Supreme Court has consistently held that the collateral-consequences exception requires more than speculation or the hypothetical possibility of a future legal consequence (*see Cyran*, 2018-Ohio-24, at ¶ 11), the firearm restriction set forth in 18 U.S.C. 922(g)(9) prevents Charleston from exercising his constitutional rights under the Second Amendment. *See State ex rel. Suwalski v. Peeler*, 2021-Ohio-4061, ¶ 31-32 (holding that federal firearms disability for misdemeanor domestic violence conviction arises by operation of 18 U.S.C. 922(g)(9) and that Ohio courts are not authorized to restore firearm rights lost under the statute). Further, Ohio courts have acknowledged that a misdemeanor conviction can affect various civil, political, and legal rights and that "[t]his category of collateral consequences includes . . . loss of rights related to firearms." *Cleveland Hts. v. Lewis*, 2011-Ohio-2673, ¶ 30 (Lundberg Stratton, J., concurring); *see also State v. Poppel*, 2021-Ohio-2536, ¶ 22 (2d Dist.) (holding that "defense counsel was not ineffective for failing to warn [defendant] that, under 18 U.S.C. 922(g)(9), he could lose his right to own a firearm by pleading guilty to a misdemeanor violation . . . because [defendant's] loss of his right to own a firearm, a disability resulting from the application of federal law, was a collateral consequence to [defendant's] plea.").

{¶ 11} Accordingly, we agree with Charleston's contention that the firearm restriction set forth in 18 U.S.C. 922(g)(9) is a collateral consequence of his misdemeanor conviction of domestic violence, and the present appeal is not moot. Charleston further argues that the

enhancement of future charges is also a collateral consequence. However, it is not necessary for us to address that argument having already resolved the question of mootness.

### III. Request for New Counsel

{¶ 12} In his assignment of error, Charleston asserts that the trial court abused its discretion when it denied Charleston's oral motion for a new attorney. He contends that the trial court ruled on his motion without affording him sufficient opportunity to explain the basis of his request.

{¶ 13} The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "It is to be expected, however, that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *State v. Malloy*, 2012-Ohio-2664, ¶ 24 (2d Dist.).

{¶ 14} "'"[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate . . . rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."'" *State v. Lawson*, 2020-Ohio-6852, ¶ 39 (2d Dist.), quoting *State v. Jones*, 91 Ohio St.3d 335, 342 (2001), quoting *Wheat v. United States*, 486 U.S. 153, 159 (1988). "In reviewing whether a trial court erred in denying a defendant's motion for new counsel, an appellate court should consider '"the timeliness of the motion . . . and whether the conflict between the attorney and the client was so great that it resulted in a total lack of communication preventing an adequate defense."'" *Id.* at ¶ 40, quoting *Jones* at 342, quoting *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996). "'In addition, courts should "balanc[e] . . . the accused's right to counsel of his choice

and the public's interest in the prompt and efficient administration of justice.'"" *Id.*, quoting *Jones* at 342-343, quoting *Jennings* at 148.

{¶ 15} Here, with respect to the issue of timeliness, Charleston made his oral motion for new counsel after the trial was underway. At the time of Charleston's request, J.A. was in the midst of testifying for the State, and jeopardy had already attached. Notwithstanding, although the trial court advised Charleston that his motion was untimely, the court still inquired of Charleston as to the reasons for his request.

{¶ 16} Charleston expressed that he did not believe his attorney met with him enough prior to trial and that he did not believe that his attorney could adequately represent him due to their minimal communication. In response, Charleston's defense attorney informed the court that he had met with Charleston twice and had advised him of the State's plea offer both times. The defense attorney had also reviewed all of the discovery received from the State and asked Charleston if there were any witnesses he should contact in preparation for Charleston's defense. Charleston stated that there were no witnesses that he wanted his attorney to contact. Charleston's attorney further noted that there were text messages that Charleston wished to be introduced at trial, but they were not relevant to the offense with which he was charged. Counsel for the State represented to the trial court that Charleston's defense attorney was capable, experienced, and seemingly prepared for trial.

{¶ 17} Although Charleston takes issue with the fact that the trial court did not give him a second opportunity to explain the basis for his motion or to respond to the representations made by his attorney and the State on this issue, the trial court was not required to afford him that opportunity in order for its inquiry to be sufficient. Importantly, the trial court stopped J.A.'s testimony when it was notified that Charleston wanted new counsel, and the court allowed him the opportunity to make his oral motion. Further, Charleston's

7

counsel explained to the court that, during his two meetings with Charleston, he reviewed the State's plea offer with Charleston, as well as possible outcomes if Charleston accepted a plea or went to trial. Charleston's attorney also reviewed the evidence contained in the discovery packet with him and inquired as to any possible witnesses that might be helpful for his defense. While Charleston may have been dissatisfied with his counsel's strategy, the trial court's inquiry was sufficient. Charleston has failed to establish that there was any breakdown in communication, much less a conflict so significant that it resulted in a total lack of communication and inability for his counsel to mount a defense.

{¶ 18} The trial court did not abuse its discretion when it denied Charleston's oral motion for new counsel. Charleston's assignment of error is overruled.

## IV. Conclusion

{¶ 19}   The trial court's judgment is affirmed.

. . . . . . . . . . . . .

TUCKER, J., and HUFFMAN, J., concur.

8