NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0329n.06

No. 20-6280

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

CORTEZ YOUNG,

     Defendant - Appellant.

)
)
)
)
)
)
)
)
)
)
)

FILED
Aug 11, 2022
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE

OPINION

Before: SUHRHEINRICH, WHITE, and STRANCH, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Defendant-Appellant Cortez Young appeals his convictions and 52-years-and-1-day sentence imposed after he pleaded guilty to sixteen counts arising out of several armed robberies and attempted robberies. Young argues that the district court erred in three ways: first, by denying two of Young's attorney's motions to withdraw as appointed counsel; second, by refusing to permit Young to withdraw his guilty plea as unknowing; and third, by denying Young's motion to dismiss two counts of the indictment on the ground that an attempt to obstruct commerce by means of robbery ("attempted Hobbs Act robbery" or "AHAR") is not a "crime of violence" within the meaning of 18 U.S.C. § 924(c). We affirm in part, vacate in part, and remand for further proceedings.

**I.**

On June 19, 2018, a federal grand jury charged Young with seven counts of robbery and two counts of attempted robbery in violation of the Hobbs Act, 18 U.S.C. § 1951; and seven counts of using, brandishing, and carrying a firearm in relation to a crime of violence in violation of

18 U.S.C. § 924(c). The indictment alleged that, between October 2017 and January 2018, Young and two associates robbed or attempted to rob nine businesses in Memphis, Tennessee. The robbers carried firearms in each alleged incident and discharged a firearm in one incident (Count 12).[1]

Young was arrested on November 14, 2018, and detained pending trial. That same day, the district court appointed attorney Howard Manis (Manis) as counsel for Young.

## A.

On June 13, 2019, during the discovery phase and prior to the scheduled August 19, 2019 trial date, Manis filed a motion to suppress certain statements made by Young as well as other evidence. The district court scheduled a hearing on this motion for August 14, 2019. However, on July 23, Manis filed a motion to withdraw as counsel. The motion explained that although Manis "met with [Young] on a number of occasions," "reviewed [with him] the potential evidence that the United States may use against him at trial," and took "great effort to explain and educate [Young] regarding his rights, including the right to go to trial and the parameters upon which he can enter a guilty plea," the "communications have not always been well received in light of the fact that [Young] is facing a fifty-two (52) year consecutive sentence." R. 110, PID 155–56. Manis stated that, "[b]ased upon my more than twenty-five (25) years' experience representing Defendants before this Court, it is my opinion that the level of communication between undersigned counsel and [Young] is inadequate for undersigned counsel to feel comfortable allowing [Young] to proceed with any decision related to disposition." *Id.* at 156. Manis also stated that he was "unable to state that my client's ability to comprehend the magnitude of the

---

[1] Young later pleaded guilty to all sixteen charges, and he states that this court may rely on the factual support underpinning the pleas for the purpose of this appeal.

situations involved in this manner, including but not limited to options for disposition, pre-trial motions, and trial through my representation is sufficient to proceed." *Id.* Manis then requested that new counsel be appointed because "Young would benefit hearing his options and thoughts regarding the case from a fresh set of eyes, ears[,] and mouth." *Id.* The government opposed Manis's motion.

In response, and without holding a hearing, the district court on July 29, 2019 appointed attorney Taurus Bailey (Bailey) as "elbow counsel" to serve alongside Manis. This act functionally provided Young with two lawyers.[2]

**B.**

On the morning of August 14, 2019, the district court held a hearing on Young's motion to suppress. At the hearing, Manis stated that Young "has indicated that he does not want to go to trial, and obviously the trial is what was precipitating the need to file the motion[] to suppress." R. 190 at 637. Manis stated that, although he did not "think that anyone would be benefited by [] moving forward with the suppression hearing based on [Young]'s position that he does not want to get a trial," the parties had not yet come to an agreement regarding "what a plea might look like." *Id.* at 638–39. Manis also requested that the district court explain to Young "[h]ow the law requires [it] to handle 924(c) sentencing," because "[i]t might be beneficial [for Young to] hear[]

---

[2] Alhough the district court did not hold a hearing on Manis's motion to withdraw, it did hear from Manis and Young one more time prior to appointing elbow counsel for Young. On July 16, 2019, at an on-the-record, ex-parte status conference between Young, Manis, and the district court, Manis informed the court that Young "wanted to make sure [the court] knew that he is desirous not to go to trial." R. 269, PID 1159. Manis implied that he had not yet received a plea bargain from the government ("I've [not] been yet presented with anything that would allow me in good faith to say to [Young] that's the path that we need to go"), and stated that this had caused "contention" between himself and Young. *Id.* at 1159–60. Manis then stated that he could not say "that [Young] fully comprehends why I'm doing what I'm doing at this point in time." *Id.* at 1160. The court told Young that "Manis does not have the ability to pull an offer out of" the prosecutor, who "has got to agree to do it. And sometimes they do and sometimes they don't." *Id.* at 1161. After Young said that he understood this, the court ended the conference.

it from the court" and he "want[ed] Young to be clear as to what the law says." *Id.* at 640–41.

The court obliged, and explained that

> under 924[(c)], if someone pleads guilty or if someone is found guilty, it's just like a mandatory minimum of, you know, on a drug case or any other place where Congress has said there's a mandatory minimum. That is the floor. And then it goes from there all the way up to life.
>
> And so I don't know which or how many 924[(c)]s you're talking about at this point, but obviously if the defendant is found guilty or pleads guilty to a 924[(c)] count, whatever the—that particular count calls for, sometimes it's five years, sometimes it's 7, sometimes it's 10, that is a mandatory minimum which means mandatory, and the court has no discretion to go below that.

*Id.* at 641–42. At Manis's request, the court then allowed Manis to conduct a voir dire with Young to ensure that Young understood his charged offenses and prospective penalties and that Manis had adequately advised him of his options. *Id.* at 643–44. The court then allowed Manis to explain to Young, on the record, that he had been charged with 16 different counts; that he could be sentenced to anywhere from 0 to 20 years on the various charges; that many of the potential sentences were required to be consecutive, which could result in Young "looking at a minimum of 52 years on" the firearms charges alone; and that Young had the option to either go to trial or enter a plea. *Id.* at 644–49. Young affirmed that he understood all this information.

Following this discussion, Manis held an off-the-record conversation with Young. He then stated that Young needed "time . . . to determine how he would like to plead versus whether or not he would like to plead. And obviously that would be with or without an agreement between the parties of any sort or an open plea situation." *Id.* at 650. Manis then stated that "there's not a need to proceed with the suppression hearing today, and it does not appear that a trial on Monday would be necessary." *Id.* at 652. He then requested that the court adjourn the plea hearing until Monday so that Young could determine "how he would like to facilitate that plea, whether it would be with or without an agreement with the government." *Id.* at 652. Rather than adjourn, the court ordered

-4-

Manis and Young to discuss next steps and implored "Mr. Young [to] understand[] that if we don't go forward today, he's waiving his right to proceed on that motion to suppress. And if we go forward Monday, any question about that evidence will be forever waived." *Id.* at 656. After conferring with Young, Manis stated that Young was "prepared to waive the suppression hearing issues" and "withdraw the motions." *Id.* at 657. The court then determined that the parties would recess and reconvene in the afternoon.

## C.

During the recess, Manis filed a motion to dismiss the seven counts of possession of a weapon during a crime of violence under 18 U.S.C. § 924(c) on the ground that the indictment did not sufficiently allege a predicate crime of violence.

At the afternoon hearing, the district court began by denying Young's motion to dismiss. The court relied on our decision in *United States v. Gooch*, 850 F.3d 285 (6th Cir. 2017), which held that Hobbs Act Robbery is a crime of violence.

The district court next turned to whether Young wanted to change his plea. Young stated that he did. After learning that Young had a high-school degree and had completed one semester of college, the district court confirmed with Young that he was not under the influence of drugs or alcohol; that he understood what it meant to change his plea; that he had received a copy of the indictment; and that he had discussed the indictment with both Manis and Bailey. In response to the question "Have you told [your attorneys] everything that you know about [your case] or do you know other things that they don't know?," Young stated that he "kn[e]w other things they don't know." R. 187, PID 588. The district court then paused the proceedings and gave Young additional time to talk to his lawyers "in order [for them] to give [Young] good advice on how to

proceed in the case."[3]  *Id.* at 588–89.  Upon reconvening, Young confirmed that he had told his lawyers everything they needed to know in order to help him.  Young also confirmed that his attorneys discussed with him "the nature of the meaning of the charges in the case."  *Id.* at 590. He then affirmed that Manis and Bailey had told him "everything that the government would have to prove in order to obtain a conviction against" him; that Manis and Bailey had discussed the possibility of trial; that he was satisfied with Manis and Bailey's representation; that he understood a guilty plea would render him a felon with fewer civil rights than non-felons; and that his guilty plea would waive his trial rights.  *Id.* at 591–94.

The district court also asked Manis whether he was satisfied that Young "underst[ood] the charges, the elements of the offense[s] charged, as well as the potential penalties and consequences of a plea."  *Id.* at 591.  Manis stated that he was satisfied.  The district court then stated that it "observed Mr. Young [] and noticed that he was tracking with the conversation and certainly appeared to understand fully what is going on in the case."  *Id.*

After ascertaining that Young understood what it meant to plead guilty, the district court said "[t]he next thing we need to talk about is what you have been charged with and the potential penalties.  Now, sometimes these are referred to as an open plea.  Is this an open plea?"  *Id.* at 594. When Manis confirmed that it was an open plea, the district court instructed the prosecutor to discuss "the nature of the charges and the potential penalties."  *Id.*  The prosecutor then explained each count in the indictment, the penalties for the counts, and that "the total mandatory minimum I have is 52 years," including a potential fine of no more than $250,000 followed by "no more than five years supervised release, plus a mandatory special assessment as it relates to each one of the

---

[3] After the recess ended, Manis informed that court that Young had misunderstood the question and that in the private meeting "he confirmed that he has shared with us all of the information that he possesses that would allow us to adequately represent him and advise him."  R. 187, PID 589–90.

counts." *Id.* at 594–97. After Young stated that he "underst[oo]d what [he'd] been charged with," the district court reiterated that "the minimum sentence that you're facing right now is 52 years," with a potential maximum of "180 years for robbery followed by the 52 years. So just to say that's the max that the court could impose, but the minimum right now today is 52 years. So you understand that, right?" *Id.* at 598. Young responded "yes, sir." *Id.* The court then explained the processes for supervised release and potential fines and that there would be "no parole board to apply to to try to reduce a sentence once the court has entered it. Do you understand that?" *Id.* at 600. Young responded "yes, sir." *Id.*

The district court then asked the attorneys whether there was a "specific plea agreement right now in this case." *Id.* The attorneys and district court had the following exchange:

> [PROSECUTOR]: We have intimated to Mr. Manis that we're willing to recommend a 25-year sentence.
>
> THE COURT: Okay.
>
> [PROSECUTOR]: And that could be discussed later.
>
> THE COURT: All right. So there's a possibility that you'll be making that recommendation, but it's not a firm agreement at this point.
>
> [PROSECUTOR]: That is correct.
>
> THE COURT: Okay. Well, were all formal plea offers by the prosecution conveyed to the defendant?
>
> MANIS: Yes.

*Id.* at 600–01. The court then explained the process by which it would engage in a sentencing determination and noted that it would need to consider the sentencing guidelines. Young answered "yes, sir" to the district court's question whether he had "talked to Mr. Manis and Mr. Bailey about the potential sentence that [he is] facing." *Id.* at 602. The district court then reiterated that, while it would have discretion to impose a sentence, it "can't under most circumstances go below those statutory minimums." *Id.* at 603–04. Young stated that he understood this. *Id.* at 604.

The district court then discussed the factual basis for Young's plea. The prosecutor provided a detailed factual basis for each count, drawing on witness interviews, testimony from Young's accomplice, and post-arrest statements from Young. *Id.* at 604–16. After conferring with Young, Manis stipulated to the facts as described by the prosecution except for any statements suggesting that he tried to pull the trigger or verbally threaten anybody's life. *Id.* at 616–19. Young then confirmed that he had no further questions and that he would like to plead guilty. *Id.* at 619–20. The court then stated the following:

> The court has observed the appearance of Cortez Young both this afternoon and during the course of this case as well as this morning when Mr. Manis asked questions on the record. And I've observed the responsiveness that Mr. Young has had to the questions that have been asked of him.
>
> And based on these observations and the answers to those questions, the court finds that Mr. Young is fully competent and capable of entering an informed plea. He is aware of the nature of the charges, the consequences of his plea.
>
> Mr. Young's plea [of] guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense.
>
> The court further finds that the defendant has had the able assistance of counsel, both Mr. Manis and Mr. Bailey. He has been fully informed of his rights of trial and has been fully advised of the maximum possible punishment. I, therefore, accept Mr. Young's plea of guilty and enter a judgment of guilty as to Counts 1 through 16.

*Id.* at 620–21.

### D.

The draft presentence investigation report (PSR) recommended that the district court "vary downward from the sentencing guideline range [of 97 months to 121 months plus 52 consecutive years for the nine Hobbs Act charges and seven crime-of-violence charges] and impose a total effective sentence of 52 years and 1 day imprisonment." R. 149-1, PID 263. Three weeks later, on November 19, 2019, Young filed a pro se motion to withdraw his guilty plea. Young's motion

stated that he had been "calling and leaving messages trying to reach out to my [l]awyer to inform him that I wanted to withdraw my plea once I found out what an open plea really was." R. 152, PID 268. Young also noted that the PSR helped him realize, along with his own research, "why the probation officer recommend[ed] so much time and that an open plea mean[s] I'm saying that I'm guilty of all 16 counts. However, that is not the case and I am not guilty of all 16 counts [b]ut [am] guilty of . . . Counts 3, 4, and 16." *Id.* at 268–69. Young stated that he only "went forward with the open plea" because Manis "put it to my understanding that as long as I plea[d] guilty that I wouldn't be charged with everything in the indictment. He never explained the meaning of an 'open' plea." *Id.* at 269. Young also noted that he took "full responsibility [for] certain counts," and stated that it was not "fair" that his offense level was a Level 30 because he was "not guilty of everything [he had been] charged with." *Id.* Finally, Young noted that he was making decisions with a "scared and unsure mind." *Id.*

The day after Young's pro se motion to withdraw his plea, Manis filed a second motion to withdraw as Young's counsel. In response to Young's allegations, Manis reiterated that he had consistently met with Young throughout discovery and "thoroughly explained to the Defendant his rights at trial and options regarding disposition of the matter." R. 153, PID 271–72. Manis also noted that "no plea agreement was ever formally offered to [Young] individually by the United States," that the only plea offer had been a "global plea requiring all three (3) defendants to accept," and that the global plea had been rejected by the other defendants. *Id.* at 272. Manis repeated the language from his prior motion to withdraw that he "took great effort to explain and educate [Young] regarding his rights, including the right to go to trial and the parameters upon which he can enter a guilty plea," and noted that his explanations continued to not be "well received in light of the fact that [Young] is facing a fifty-two (52) year consecutive sentence." *Id.* Manis also noted

that "elbow counsel" Bailey "met with the defendant [both privately and with Manis] and reviewed wit[h] him all of his rights prior to the plea being entered," and that the two attorneys reviewed the PSR together with Young. *Id.* at 272–73. Manis also said that "there was no discussion about withdrawing [Young's] plea" at the PSR meeting. *Id.* at 273. Manis further stated that he had "received no messages from" Young despite "maintain[ing] an answering service 24 hours a day" and that "both the Court and both counsels thoroughly explained the effect of [Young's] plea" despite Young's insistence that Manis informed him a plea would not result in a conviction on all counts. *Id.* Referring to his earlier attempt to withdraw as counsel, *id.* at 272, Manis stated that it was "clear based upon [Young's request for plea withdrawal that] an irreparable conflict now exists between [Young] and counsel" because, if Young believed as alleged that "counsel was ineffective in advising him of the effects of the plea, it would be wise to allow counsel to withdraw and make the way for new counsel to assist [Young] in whatever direction he ch[oos]es to proceed." *Id.* at 273–74.

On November 26, 2019, the court held a hearing on Manis's motion to withdraw as counsel. During an on-the-record bench conference, Manis wondered whether Young was experiencing "buyer's remorse" or whether the court and lawyers were "missing maybe an intellectual issue" given Young's frustration with his sentence after receiving the PSR. *See* R. 265, PID 1030–31. Back in open court, the court denied the motion to withdraw, noting that "what [it] didn't see in [the] motion is the sort of break in communication or the adverse nature that would make a motion like [this] the kind [] that [it] would have to grant." *Id.* at 1035. The court denied the motion without prejudice so that the two attorneys could "work with Mr. Young" to "figure out an approach here," and "if that doesn't work," the court would be available for further discussion. *Id.* The court was not concerned about Young's understanding of the plea because "we took quite a

long time to go through what he is charged with, what he was facing . . . we talked about it in advance and I know [you] went over it with him in advance." *Id.* at 1035–36. On Manis's suggestion, the court agreed to turn the sentencing date into a status conference to allow counsel the opportunity to meet with Young and hear him out regarding his grounds for withdrawing the plea. *Id.* at 1038.

At the subsequent status conference, Manis and Bailey confirmed to the district court that they had each spent multiple hours discussing next steps with Young. Young also confirmed that Manis and Bailey had given him options. Young then told the court that he would like to "talk to [his] lawyers about" proceeding with a counselled motion to withdraw the guilty plea. R. 272, PID 1213.

**E.**

Manis and Bailey then filed a motion requesting, without elaboration, that Young's guilty plea be withdrawn on the basis that it was not a knowing plea and that an evidentiary hearing be held. The motion incorporated Young's pro se motion by reference.

On January 28, 2020, the court heard argument on Young's motion to withdraw his plea. Young confirmed that he had reviewed the guilty-plea transcript and had no questions for his lawyers regarding the guilty plea. Young stated that he "didn't know what [he] was doing" and that he thought the "open plea" would result in "signing for certain charges and certain charges getting knocked off." R. 236, PID 838. Young stated that he had "no knowledge what the open plea really was because [he] was at . . . county jail at the time" and did not have "the tools" to understand. *Id.* However, once he arrived in federal custody, Young talked to people around the compound and "read[] on it" and realized that "an open plea was me saying I was guilty of all 16 counts" and he "instantly wanted to take it back because" that was not what he "wanted." *Id.*

-11-

Instead, Young "thought [he] was going to get some type of deal, like, how my lawyer was proceeding to tell [him]." *Id.* Young also stated that he had never been in a similar situation before and "could only go off what" his lawyer told him, which he "misperceived. . . . I just can't say he was just telling me wrong but I missed how he was saying it. So I felt like, you know, that I should have the opportunity to withdraw my plea, based on my understanding." *Id.* at 839. Young stated that the way his lawyer was "coming at [him]" made him "feel like . . . I was going to get some of these charges dropped." *Id.* at 839–40. Young stated that he did not understand the court's questions under oath during the plea hearing because he "just ha[s] a hard time really comprehending, especially with me not being in . . . a situation like this" before. *Id.* at 840. Young then agreed with Manis's summary that he "didn't understand that, on August 14th, [he was] admitting [his] guilt to all 16 counts, which would have been all of the robberies, plus all of the gun counts." *Id.* at 845.

Manis and the prosecutor then questioned Young. When Manis asked whether he had ever presented Young with an individual plea agreement aside from the rejected global agreement, Young answered "no." *Id.* at 843. Young confirmed that he could read, write, and understand the English language, that he completed high school, and that he took some college courses. *Id.* at 848–49. He also confirmed that he remembered the district court and the attorneys discussing the sixteen counts with him and explaining their respective sentences. *Id.* at 858–59. He confirmed that he remembered Manis explaining that he "would be looking at a minimum of 52 years just for the 924(c)s," and he remembered responding at the time that he understood that statement. *Id.* at 860–61. He also confirmed that he understood that being under "oath" meant making a promise "to tell the truth." *Id.* at 866–67. Nevertheless, Young repeatedly insisted that he "misinterpreted"

what he was pleading to. *Id.* at 861; *id.* at 864 ("If I misinterpreted it, I misinterpreted it."); *id.* at 868 ("if I say I ain't comprehend it, then I ain't comprehend it").

Young and the prosecutor also had this colloquy:

[PROSECUTOR]: If I say something in this courtroom that differs with the Judge, who are you going to rely on, what I say or the Judge?
YOUNG: I'll rely on what the Judge says.

*Id.* at 873.

After the lawyers questioned Young, Manis stated that while "buyer's remorse" is an inappropriate reason to withdraw a plea, there "seems to be some correlation *[sic]* to" Young's testimony that he did not understand the sentence because "there wasn't any question that everybody said to Mr. Young, this is what's going to happen. So I have to question whether or not he truly understood." *Id.* at 876–77. Manis then recommended that the court permit Young to withdraw the plea and that the parties prepare for trial as "the only safe-out at this point." *Id.* at 878.

The court denied his motion, concluding that Young had not presented a "fair and just reason" for withdrawing his plea. *Id.* at 883–888.

**F.**

On February 13, 2020, Manis and Bailey filed a joint motion to withdraw as Young's counsel. They stated that Young had "been wholly uncooperative in preparation for his defense at various material stages procedurally, and has indicated multiple times that he will not communicate or work with either of his counsels." R. 205, PID 700. They also noted that Young had "been adversarial" and that they and Young "continue[d] to have unresolved conflicts of legal understanding, case theory, sentencing strategies and opportunities to exercise zealous representation." *Id.* The motion noted that Young supported the withdrawal and the government

did not oppose it. *Id.* The court held a hearing on the motion to withdraw, granted it, and appointed new counsel.

On October 28, 2020, the court sentenced Young to the mandatory minimum sentence of 52 years and 1 day. Young filed a timely appeal, arguing that the district court erred in denying Manis's first two motions to withdraw as counsel, in denying Young's motion to withdraw his plea, and in denying Young's motion to dismiss several counts of the indictment.

## II.

### A.

We review for abuse of discretion a district court's ruling on a motion to withdraw or remove trial counsel. *United States v. Mooneyham*, 473 F.3d 280, 291 (6th Cir. 2007). "A district court abuses its discretion where it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *United States v. Catchings*, 708 F.3d 710, 717 (6th Cir. 2013) (quoting *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008)).

We also review for abuse of discretion the denial of a motion to withdraw a guilty plea. *Id.* However, "[w]e review de novo whether a defendant's plea was entered knowingly, voluntarily, and intelligently," and "[t]he underlying factual bases relied upon by the district court are reviewed for clear error." *Id.* at 716 (quoting *United States v. Dixon*, 479 F.3d 431, 434 (6th Cir. 2007)).

We review de novo a district court's legal conclusions in a ruling on a motion to dismiss a criminal indictment. *See United States v. Grenier*, 513 F.3d 632, 636 (6th Cir. 2008).

### B.

The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of trial counsel. U.S. Const. amend. VI; *Mooneyham*, 473 F.3d at 291. While "[a]n essential

element of this right is the right to have counsel of one's choice," the right is "not absolute." *Mooneyham*, 473 F.3d at 291. Accordingly, an indigent defendant must demonstrate "'good cause' to warrant substitution of counsel," and we disturb a district court's refusal to do so "only if the district court abused its discretion." *Id.* (quoting *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990). In determining whether a district court abused its discretion in denying amotion to substitute or withdraw counsel, we consider the four so-called *Jennings* factors:

(1) "the timeliness of the defendant's motion";

(2) "the adequacy of the court's inquiry into the defendant's complaint";

(3) whether the conflict between the attorney and client was so great that it resulted in a "total lack of communication preventing an adequate defense"; and

(4) "a balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice."

*United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996) (citing *Iles*, 906 F.2d at 1130 n.8).

Young alleges that the district court erred in denying Manis's first two motions to withdraw as counsel—the first on July 23, 2019, prior to the guilty plea, and the second on November 20, 2019, after Young filed his pro se motion to withdraw the guilty plea. Appellant's Br. at 13. Citing events that Young says demonstrate a "conflict of interest" between Manis and Young—including the July 16 ex-parte conference and the August 14 hearing in which Manis told the court that Young did not wish to go to trial—Young argues that this conflict of interest "affected the adequacy of his representation" and should have resulted in a grant of his motions to withdraw counsel. *Id.* at 18, 29–31.

Although Young's withdrawal-of-counsel arguments largely involve allegations of ineffective assistance of counsel (IAC), he is clear that he does not assert an IAC claim on appeal,

and the factual allegations are simply to show that there was a conflict with counsel of sufficient magnitude to warrant Manis's withdrawal. *See id.* at 35.

## 1.

Manis was appointed on November 14, 2018 and filed his first motion to withdraw on July 23, 2019—less than a month before Young's scheduled trial date, August 19, 2019. This timing, particularly when Manis and Young had more than a year of experience working together and could have filed the motion earlier, rendered the motion untimely. *See United States v. Marrero*, 651 F.3d 453, 465 (6th Cir. 2011) (citing cases concluding that withdrawal motions filed less than a month before trial are untimely). Young responds that "there was never an actual delay" in the trial date because the date was ultimately "moved."[4] Reply at 3. But this retrospective reasoning does not impact whether the district court abused its discretion at the time it denied the motion, when the trial was still scheduled for August 19.

Regarding the second *Jennings* factor—the adequacy of the district court's investigation into the defendant's complaint—the district court granted Young a second lawyer: the "fresh set of eyes, ears[,] and mouth" that the motion requested. R. 110. This was an appropriate response to Manis's request given that Manis did not claim that he and Young had an irreconcilable conflict or that Young wanted a new lawyer, but rather that their level of communication was "inadequate for undersigned counsel to feel comfortable," and that Young "would benefit hearing his options and thoughts regarding the case" from a new voice. *Id.* at 156. The district court also heard Manis explain the source of his and Young's difficulties in person during the July 16 ex parte conference, with Young present. R. 269, PID 1159–60 (Manis explaining to the court that Young did not want

---

[4] The only *Jennings* factor that Young explicitly addresses in his briefing is the timeliness of the July 23 motion. Reply at 3. He otherwise notes in his reply that "[t]here was no need to provide a detailed analysis of the [*Jennings*] factors . . . because [] Manis acknowledged most of them." *Id.* at 5.

to go to trial, but that the government had not yet offered Young a plea agreement and that these circumstances had caused "contention" between Manis and Young). Thus, we are satisfied that the district court sufficiently investigated Young's complaint even without a formal hearing. *See United States v. Ellens*, 43 F. App'x 746, 749–50 (6th Cir. 2002) (holding that "direct inquiry" into a motion to withdraw "is not necessary in every case" when "the district court reasonably believe[s] that the problems between defendant and counsel had been solved") (citing *Iles*, 906 F.2d at 1131).[5]

We are also satisfied that Manis and Young's communication was not so inadequate that it "prevent[ed] an adequate defense." *Jennings*, 83 F.3d at 148 (quoting *Iles*, 906 F.3d at 1130 n.8). Manis told the court several times that he and Young were having difficulty communicating and that he wondered whether Young "fully comprehends why I'm doing what I'm doing." R. 269, PID 1160. However, the record reflects that at the time the district court resolved the motion to withdraw, Manis was zealously filing trial motions on Young's behalf while simultaneously attempting to negotiate a plea. This working relationship, while "strained," reflects progress in Young's case and does not suggest a "total" or "irreconcilable" breakdown in communication. *United States v. Vasquez*, 560 F.3d 461, 468 (6th Cir. 2009).

Finally, the district court's appointment of elbow counsel appropriately "balance[d] . . . the accused's right to counsel of his choice and the public's interest in the prompt and efficient

---

[5] Young notes that the district court's appointment of Bailey was "not a satisfactory resolution at least in hindsight" because of subsequent conflict between Bailey and Young. Appellant's Br. at 34. But again, this "hindsight" argument does not bear on whether the district court abused its discretion at the time it resolved Young's motion.

Young also notes that the district court erred in denying the motion to withdraw because "[t]he motion asserted that [] Young was unable to comprehend yet [] Manis never asserted a lack of competence or asked for a cognitive assessment." *Id.* While this argument may bear on a future IAC claim, it has nothing to do with whether the court appropriately adjudicated the motion to withdraw counsel.

administration of justice." *Jennings*, 83 F.3d at 148. Given that Manis sought to withdraw as counsel less than a month before trial on a sixteen-count indictment, "[s]ubstitution of counsel would [have] almost certainly necessitate[d] a last-minute continuance." *Vasquez*, 560 F.3d at 468 (citation omitted). Young's trial had already been postponed once, and it is "axiomatic that both a criminal defendant *and* the public have an interest in a speedy trial." *United States v. Johnson*, 612 F. App'x 345, 352 (6th Cir. 2015).

We accordingly conclude that the district court did not abuse its discretion in appointing elbow counsel in response to Manis's first motion to withdraw as counsel.

**2.**

The district court similarly did not abuse its discretion in denying Manis's November 20, 2019 motion to withdraw as counsel. The timeliness factor slightly favors Young—Manis moved to withdraw as counsel one day after the events that precipitated the motion. But the second, third, and fourth factors overwhelmingly weigh against finding an abuse of discretion. First, the district court's inquiry was exceptionally thorough. The court held two conferences, the first to discuss the motion to withdraw as counsel in conjunction with the motion for withdrawal of guilty plea. After determining that counsel should try once more to work with Young, the court said that it would be available for further discussion "if that doesn't work." R. 265, PID 1035. After allowing Manis and Bailey time to confer with Young, the court held a second conference in which Young stated that he would, in fact, like to proceed with his counsel. R. 272, PID 1213. The conflict between Young and his attorneys was therefore not "total," *Jennings*, 83 F.3d at 148, and the court's measured response to the withdrawal motion moved the case forward while balancing Young's and the public's interests in the administration of justice. *Id.*

**C.**

We next turn to Young's claims that his plea was unknowing and that the district court erred in refusing to permit him to withdraw it.

**1.**

The Due Process Clause of the Fourteenth Amendment guarantees that a defendant shall not waive constitutional trial rights by guilty plea unless the plea is "voluntary," "knowing," and intelligent—that is, made while "the defendant possesses an understanding of the law in relation to the facts." *McCarthy v. United States*, 394 U.S. 459, 466 (1969) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)); *Catchings*, 708 F.3d at 716 ("A guilty plea is valid if it is entered knowingly, voluntarily, and intelligently by the defendant." (quoting *Dixon*, 479 F.3d at 434)). The district court is responsible for "verif[ying] that the defendant is pleading voluntarily" and that he "understands his [] applicable constitutional rights, the nature of the crime being charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *Catchings*, 708 F.3d at 716 (quoting *United States v. Webb*, 403 F.3d 373, 378–79 (6th Cir. 2005)); Fed. R. Civ. P. 11.

Young argues that his guilty plea was unknowing. Appellant's Br. at 39. However, he specifically notes that he is "not claiming that the trial court failed to make any of the necessary warnings contained in" Federal Rule of Criminal Procedure 11(b)(A)-(N). *Id.* at 38. Instead, Young highlights four "developments" that created "confusion" for him given his lack of "prior experience with the criminal justice system." *Id.* Those developments are:

(1)     The fact that that the plea took place "less than eight hours" after "an early morning hearing where a motion to suppress was to be heard";

(2)     The prosecutor's mention during plea proceedings of a "possibility of a recommendation from the government of 25 years";

(3) The district court's comment on the morning of August 14 that it "d[idn't] know which or how many 924[(c)]s you're talking about at this point"; and

(4) The district court's use of the term "open plea" during the plea proceedings, when Young did not know what that term meant.

*Id.* at 39–40. On this record, none of these circumstances demonstrate that Young's plea was unknowing.

Young's first allegation—that he was confused because he switched from trial preparation to guilty plea in a relatively short time—is undermined by Manis's statement at the ex-parte conference—with Young present—that Young had been seriously contemplating a plea for at least several weeks prior to the plea hearing. *See* R. 269, PID 1159 (Manis noting at the July 16, 2019 ex-parte conference, with Young present, that Young "wanted to make sure [the court] knew that he is desirous not to go to trial").

The remaining three comments cited by Young did not render his plea unknowing in light of the significant effort expended by all involved to ensure that Young understood his charges and options. Manis and the court engaged in two separate colloquies with Young on the day of the guilty plea and repeatedly informed him that his minimum sentence would be 52 years, which Young repeatedly stated he understood. While the prosecutor did note, in response to the district court's question about whether there was a current plea agreement, that "[w]e have intimated to [] Manis that we're willing to recommend a 25-year sentence," the court immediately clarified that "[s]o there's a possibility that you'll be making that recommendation, but it's not a firm agreement at this point." R. 187, PID 600–01. The court stated "the minimum right now today is 52 years. So you understand that, right?" *Id.* at 598. Young responded "yes, sir." *Id.* In the plea colloquy, Young stipulated to the factual bases for the sixteen counts in his indictment and pushed back

when the prosecutor asserted facts with which Young did not agree.[6] *See* R. 187, PID 617–21 (Young disagreeing that he tried to pull the trigger during one robbery and that he ever verbally threatened the life of a victim). These facts suggest that Young's plea was knowing, particularly coupled with the court's confirmation that Young had attended high school and some college, and that Young was "fully competent and capable of entering an informed plea" given "the responsiveness that [] Young has had to the questions that have been asked of him" and the court's "observ[ation]" of Young's "appearance" "both th[e afternoon of the plea] and during the course of this case as well as this morning when [] Manis asked questions on the record."[7] *Id.* at 20–21.

As Young asserts, "where a defendant claims that he misunderstood the consequences of his plea, courts must evaluate the record to determine if the 'circumstances as they existed at the time of the guilty plea, judged by objective standards, reasonably justified his mistaken impression.'" *United States v. Crusco*, 536 F.2d 21, 24–25 (3d Cir. 1976) (quoting *Mosher v. LaVallee*, 491 F.2d 1346, 1348 (2d Cir. 1974)) But here, the record overwhelmingly indicates that Young understood the consequences of his plea at the time it was given. The prosecutor's single reference to the possibility of a 25-year recommendation did not create confusion sufficient to render Young's plea unknowing when Young knew that there was no plea agreement and the court

---

[6] Neither of Young's factual objections had any bearing on the essential elements of the crimes to which he pleaded guilty.

[7] Young displayed a similar competence during his plea-withdrawal hearing, where he stated that he remembered hearing during his plea that he "would be looking at a minimum of 52 years just for the 924(c)s," remembered responding that he understood that statement, and understood that being under "oath" meant making a promise "to tell the truth." R. 236, PID 866–67. Although Manis indicated at several points during the proceedings that he worried about whether Young "comprehend[ed]" his situation or that there may be an "intellectual issue," R. 265, PID 1030–31; R. 269, PID 1160, the district court repeatedly observed that Young seemed "competent," "capable," and "aware" of the proceedings. *See, e.g.*, R. 187, PID 617–21; R. 265, PID 1035–36. Nor could we find, after a detailed examination of the record, additional evidence that that Young could not or did not understand the proceedings. *See* PSR at 19 (noting a diagnosis of untreated attention deficit hyperactivity disorder (ADHD) but "no other history of mental" or "emotional" problems).

and Manis repeatedly stated that the minimum sentence would be 52 years. *See United States v. Cinnamon*, 112 F. App'x 415, 419 (6th Cir. 2004) (holding that "the alleged misadvice of [an] attorney did not require the withdrawal of [a] guilty plea" when "any erroneous advice of [the] attorney was cured by the court's advice at the plea hearing.") Indeed, at Young's plea-withdrawal hearing, he confirmed that he knew that if he perceived a conflict between the prosecutor's statement and the judge's statement to "rely on what the Judge says." R. 236, PID 873. The judge's communications consistently informed Young that he was facing 52 years.

Accordingly, Young's plea was not unknowing.

**2.**

Nor did the district court abuse its discretion in denying Young's motion to withdraw his guilty plea. It is Young's burden to demonstrate "a fair and just reason for requesting the withdrawal" of his guilty plea. Fed R. Crim. P. 11(d)(2)(B). District courts apply, and we then review, seven factors in determining whether a defendant may withdraw a guilty plea:

(1) the amount of time that elapsed between the plea and the motion to withdraw it;
(2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings;
(3) whether the defendant has asserted or maintained his innocence;
(4) the circumstances underlying the entry of the guilty plea;
(5) the defendant's nature and background;
(6) the degree to which the defendant has had prior experience with the criminal justice system; and
(7) potential prejudice to the government if the motion to withdraw is granted.

*Haygood*, 549 F.3d at 1052 (quoting *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994)). Courts need not consider the seventh factor unless the defendant first demonstrates a "fair and just" reason for withdrawing his plea. *United States v. Spencer*, 836 F.2d 236, 239 (6th Cir. 1987). The purpose of a Rule 11(d) plea withdrawal is to "allow a hastily entered plea made with unsure heart

and confused mind to be undone, not to allow a defendant to make a 'tactical decision to enter a plea, wait several weeks, and then . . . withdraw[] if he believes that he made a bad choice.'" *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) (quoting *United States v. Carr*, 740 F.2d 339, 345 (5th Cir. 1984)).

The district court concluded that Young had "not presented a fair and just reason for withdrawing his plea." R. 236, PID 888. As to the first factor, Young pleaded guilty on August 14, 2019, and moved to withdraw his guilty plea more than three months later, on November 19, 2019, after seeing his PSR and doing his research while in federal custody. The district court found that the time between the plea and withdrawal weighed against Young because he filed his motion "just shy of three weeks" after "he saw the PSR [and] what he was facing in black and white. Despite our efforts to explain it to him, now he sees it in black and white." R. 236, PID 886. Young responds that he wanted to withdraw his plea earlier but that he could not reach his lawyers. Appellant's Br. at 40–41. But even if this disputed allegation were true,[8] and even if Young had filed his motion to withdraw on October 31, 2019—the day the PSR was issued— Young still would have waited 78 days after entering his plea. We have repeatedly held that such delays are untimely. *See, e.g.*, *United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996) (finding a plea withdrawal untimely after 67 days); *Spencer*, 836 F.2d at 239 (five weeks). Additionally, the PSR did not contain any information that was not extensively explained to Young during his plea hearing. This factor weighs against Young.

As to the second factor, the district court apparently did not credit Young's claims that he could not reach his lawyer, because the court found no valid reason for Young's failure to withdraw

---

[8] Manis testified that he "received no messages from" Young despite "maintain[ing] an answering service 24 hours a day." R. 153, PID 273.

his guilty plea earlier. R. 236, PID 886–87. Young reiterates on appeal that he could not withdraw his plea earlier because he was "dependent on [] Manis and [] Bailey to visit him and follow his instructions to withdraw the plea," Appellant's Br. at 41, but he does not address Manis's testimony that he received no messages from Young and that Young did not mention a plea withdrawal when they met to discuss the PSR. Nor did Young explain why he did not file his pro se motion earlier. We agree with the district court's apparent credibility determination and conclude that this factor weighs against Young.

As to the third factor, the district court found that Young had not maintained his innocence because although "he now says that he was guilty of some [counts] and not others . . . [at the plea hearing,] . . . Young [only] quibbled over . . . whether he threatened somebody, and [] whether he fired a shot. He didn't quibble over anything else." R. 236, PID 887. Accordingly, the court found that the assertion of innocence "came quite late in this process." *Id.* Young acknowledges on appeal that his "assertion of innocence came at the same time as his motion to withdraw the plea." Appellant's Br. at 41. Given that Young did not consistently maintain his innocence, this factor also weighs against him.

As to the fourth factor, the district court found that the circumstances underlying Young's guilty plea weighed "heavily" against him because the court could not "think of a way that we could have been more careful and deliberate and thorough in making sure that [] Young understood the consequences of his plea." R. 236, PID 887. On appeal, Young repeats his alleged misunderstandings as evidence to the contrary. For the reasons discussed in Section II(B), *supra*, we agree with the district court and also conclude that this factor weighs heavily against Young.

Apparently combining the fifth and sixth factors, the district court found that Young's nature and background rendered the fifth factor "equivocal," because while Young was "educated"

and "sharp," he had "no criminal history whatsoever," which may have given him difficulty navigating the plea process. R. 236, PID 887. This difficulty rendered the sixth factor—Young's prior experience with the criminal justice system—in his favor. *Id.* at 887–88. On appeal, Young argues that the court failed to consider Young's ADHD (which appeared in the PSR) and the fact that Young did not do well in school (which did not appear in the PSR). These arguments do not disturb the appropriate weight that the district court attributed to each factor given the court's extensive on-the-record observations of, and conversations with, Young. We find no abuse of discretion in the court's weighing of these factors.

The district court did not reach the final factor of whether withdrawing the plea would prejudice the government. Appellant's Br. at 43 (noting only that the district court made "no findings" on this matter). It did not need to because it concluded that Young had not presented a "fair and just" reason for withdrawing his plea.[9] R. 236, PID 888; *Spencer*, 836 F.2d at 240. This determination was appropriate for the reasons discussed.

Accordingly, the district court did not abuse its discretion in denying Young's motion to withdraw his guilty plea.

**D.**

The indictment charged Young with seven counts (1, 3, 7, 9, 13, 15, 16) of Hobbs Act robbery in violation of 18 U.S.C. § 1951–2, and two counts (5 & 11) of attempted Hobbs Act robbery. Seven of these Hobbs Act charges, including the two attempt charges, were accompanied by charges of using, carrying, or brandishing of a weapon during a crime of violence (2, 4, 6, 8, 10, 12, 14) in violation of 18 U.S.C. § 924(c). Each § 924(c) charge alleged that Young, "during

---

[9] However, the court implied that the "potential prejudice to the government" weighed against Young because "we were on the eve of trial and [] Young knew that and he knew the case was going forward the following Monday," and "[h]e chose to enter his plea." R. 236, PID 888.

and in relation to a crime of violence, specifically 'Robbery Affecting Commerce' . . . knowingly use[d], carr[ied,] and brandish[ed] a firearm." R. 2, *passim.*

Young filed a motion to dismiss all seven of his § 924(c) charges. He argued that they should be dismissed because they "fail[ed] to specifically allege as an element the use, attempted use, or threaten[ed] use of physical force against the person or property of another," R. 118, PID 188, as is required to establish an offense as a "crime of violence" under § 924(c)(3)(a). *United States v. Ledbetter*, 929 F.3d 338, 361 (6th Cir. 2019). The district court denied Young's motion as to the Hobbs-Act § 924(c) charges because it was "b[ound]" by our decision in *United States v. Gooch*, which held that Hobbs Act robbery is a "crime of violence" within the meaning of the elements clause of § 924(c)(3). R. 187, PID 581. The district court then extended *Gooch* to hold that attempted Hobbs Act robbery is also a "crime of violence" under § 924(c)(3) and denied Young's motion as to the two AHAR § 924(c) charges. *Id.* at PID 581–82.

On appeal, Young asks that we reverse the district court's denial of his motion as to counts 6 and 12—which were the § 924(c) charges for counts 5 and 11—arguing that AHAR is not a "crime of violence" within the meaning of § 924(c)(3).

The Supreme Court recently answered that question in *United States v. Taylor*, 142 S. Ct. 2015, 596 U.S. ___ (2022). After he was convicted and sentenced under the Hobbs Act and § 924(c), Taylor filed a federal habeas petition arguing that his § 924(c) conviction was improperly "predicated on his admission that he had committed both conspiracy to commit Hobbs Act robbery and attempted Hobbs Act robbery," neither of which constituted a "crime of violence" under the Supreme Court decision in *United States v. Davis*, 139 S. Ct. 2319, 588 U.S. ___ (2019), which held that a § 924(c) conviction is unconstitutional unless it is based on a predicate offense that has

"as an element the use, attempted use, or threatened use of physical force against the person or property of another." *Taylor*, 142 S. Ct. at 2019 (quoting § 924(c)(3)(A)).

The *Taylor* Court explained that "[t]he only relevant question" in determining whether a felony is a § 924(c)(3)(A) predicate offense "is whether the federal felony at issue always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force." *Id.* at 2020. To prove AHAR, the government must prove "(1) [t]he defendant intended to unlawfully take or obtain personal property by means of actual or threatened force, and (2) he completed a 'substantial step' toward that end." *Id.* (citing *United States v. Resendiz-Ponce*, 549 U.S. 102, 107 (2007)). Explaining that "[t]o know that much is enough to resolve this case," the Supreme Court concluded that AHAR may not be a predicate offense for a § 924(c) conviction because it "does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property." *Id.*

The government agrees that *Taylor* requires us to vacate the district court's judgment as to counts 6 and 12 because Young's two AHAR convictions may not serve as predicate crimes of violence for any convictions under § 924(c). Thus, we vacate Young's convictions of counts 6 and 12 and remand for resentencing consistent with this decision.

## III.

For the foregoing reasons, we AFFIRM in part, VACATE in part, and REMAND for further proceedings.