[Cite as *State v. Watts*, 2024-Ohio-3385.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff - Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| LANE WATTS, | : | Case No. CT2023-0082 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Muskingum County
                             Court of Common Pleas, Case No.
                             CR2023-0161


JUDGMENT:                    Affirmed


DATE OF JUDGMENT:            August 30, 2024


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

RONALD L. WELCH                           APRIL F. CAMPBELL
Prosecuting Attorney                      545 Metro Park South Suite 100
Muskingum County, Ohio                    Dublin, Ohio 43017


JOSEPH A PALMER
Assistant Prosecuting Attorney
27 North Fifth St.
Zanesville, Ohio 43701

*Baldwin, J.*

{¶1}   The appellant appeals his conviction and sentence on the charges of having a weapon while under disability and tampering with evidence. Appellee is the State of Ohio.

## STATEMENT OF THE FACTS AND THE CASE

{¶2}   On the morning of February 23, 2023, paramedics and law enforcement officials were called to the appellant's residence, where he was found bleeding from a wound to his leg. He was taken to the hospital, where he received treatment for his injury. The appellant initially told authorities that his injury was a stab wound, but medical personnel determined that the appellant's injury was a gunshot wound, which they were required to report to law enforcement authorities.

{¶3}   The appellant was indicted on March 8, 2023, on one count of Having a Weapon While Under Disability in violation of R.C. 2923.13(A)(2) and (B), a felony of the third degree, with a firearm specification pursuant to R.C. 2941.141(A). Count one further specified that the appellant had been previously convicted of Aggravated Robbery, a first degree felony with a firearm specification, in violation of 2911.01 and 2923.13(A)(2) and (B) in Muskingum County Court of Common Pleas Case Number CR2015-0256. In addition, the March 8, 2023, indictment charged the appellant with two counts of Tampering with Evidence in violation of R.C. 2921.12(A)(1) and (B), a felony of the third degree, each with a firearm specification pursuant to R.C. 2941.141(A). The appellant pleaded not guilty, and the case was scheduled for trial.

{¶4}   The jury trial took place on August 24 and 25, 2023, on one count of having a weapon while under disability, and one count of tampering with evidence. Prior to jury

selection, the appellee moved to amend the indictment to correct the appellant's prior conviction from aggravated robbery to aggravated burglary. Because the amendment did not change the charge of having a weapon while under disability as set forth in count one, nor the defense thereto, the trial court permitted the amendment. The jury was selected, and the following evidence was presented at trial.

{¶5} Law enforcement and paramedics arrived at the residence located at 817 Dryden Road in Zanesville, Ohio in response to a call involving an injury to the appellant. The incident was originally reported as a stab wound. The appellant was treated at the scene and transported to the hospital by EMTs, who noted a gun shell casing under the appellant as they transferred him to a gurney.  Once at the hospital, the appellant was evaluated by a nurse practitioner, and then emergency room doctor Michael Roesch. Dr. Roesch testified that he reviewed the nurse practitioner's medical notes regarding the appellant's injuries, and then conducted his own evaluation. He noted that the appellant's injury was not consistent with a stab wound, but rather, a gunshot wound, which he was required by law to report. Dr. Roesch referred to the appellant's medical records during his testimony, to which the appellant's counsel did not object.

{¶6} The appellant's parole officer, Doug Nutter, testified that he supervised the appellant while he was on post-release control. The parties stipulated to the appellant's prior conviction of aggravated burglary and escape, felonies of the first and second degree respectively. Mr. Nutter testified that the appellant was not permitted to possess a firearm while on post-release control supervision. While Mr. Nutter mentioned the appellant's marijuana use, he noted that the appellant had a medical card allowing it.

**{¶7}** Detective Michael Popadak of the Zanesville Police Department testified that law enforcement officials obtained a search warrant for the 817 Dryden Road residence following the report from emergency room personal that the appellant had suffered a gunshot wound to his leg. Detective Popadak identified photographs of the scene, some of which documented a puncture hole in the wall behind the couch. In addition, he identified photographs of the spent shell casing which had been observed by the EMTs, and a bullet that had been discharged from a firearm. Detective Popadak testified that the evidence revealed that the bullet had penetrated the couch and then the wall from an upward angle.

**{¶8}** Detective Bryan Ruff of the Zanesville Police Department testified that he arrived at the appellant's residence after the appellant had been taken to the hospital and his injury was determined to be a gunshot wound. Detective Ruff participated in investigating the scene and gathering the evidence. Detective Ruff testified regarding video footage from the white security camera that was located in the front window of the residence facing the outside of the front door. The video was played for the jury, during which Detective Ruff testified regarding the fact that it was "calm and quiet" during the 6:46 a.m. segment of the video, then during the 6:47 a.m. segment of the video it "sounds like a gunshot occurs and then sound of somebody being in pain or agony." Detective Ruff testified further that no other voices prior the gunshot were heard, nor could any other persons, or discussions between people, be heard. Detective Ruff testified that another voice is heard on the video following the gunshot, which sounded like a female voice. The last video admitted into evidence was recorded at 6:51 a.m., and lasts 56 seconds. The call to 9-1-1 came in at 7:02 a.m. Detective Ruff testified that approximately

fifteen (15) minutes elapsed from the time the gunshot was heard on the recording to the time of the 9-1-1 call.

{¶9}   Initially the appellant told detectives that he simply woke up with his injury. Detective Ruff testified that he spoke with the appellant two times. The first time was at the hospital shortly after the appellant had been given pain medication; he was not providing much information and his speech was slurred, and as a result Detective Ruff ended the first interview. When he interviewed the appellant the second time, the appellant "seemed to be more alert and was able to answer … questions a little more thoroughly." The appellant told Ruff that "he had shot himself." A recording of the second interview was identified by Detective Ruff and played for the jury. The appellant can clearly be heard on the recording, and stated that he had a handgun that he put in the waistband of his pants at the right hip, he fell asleep on the couch, and when he woke up on the floor his leg was burning and he saw blood. He refused to tell Detective Ruff where he obtained the gun. Detective Ruff testified that the appellant "made the statement that ' I gave it to who I gave it to and they did what they did; ' " and, that the appellant stated he "don't know where the gun is now," and that Ruff "ain't gonna find the gun." No handgun was recovered.

{¶10}  The appellant testified against legal advice. He was initially questioned by his counsel, during which he testified that he had been convicted of aggravated burglary, escape, theft, and tampering with evidence in 2015; and, that at the time of the trial he was on post-release control as a result of the 2015 convictions. He testified that he fell asleep on the couch and woke up to a burning pain in his leg, at which time he saw male running out the back door. He then testified that he only told Detective Ruff he shot himself

because he wanted to protect Leslie Anders, whom he was he was told was being detained.

{¶11} Detective Ruff was called in rebuttal to the appellant's testimony, and testified as follows:

Q:    And as a detective, based on all the information you have, if - - if a third person were to have shot Mr. Watts, where would they have had to have been in the living room?

A:    Based off the trajectory and the holes we found in the couch and in the wall, they would have to have been nearly laying on Mr. Watts, holding the gun near his waistband to have shot it in the angle to hit his leg, go though [sic] the couch, and then in to the wall.

Q:    And perhaps also elevating his leg up?

A:    As well as elevating his leg up to hit that angle.

{¶12} The jury returned a verdict of guilty on both counts, and the appellant was sentenced as follows: as to Count One, having a weapon while under disability, thirty months in prison, with an additional mandatory prison term of one year for the firearm specification associated with the charge of having a weapon while under disability; and, as to Count Two, tampering with evidence, thirty months in prison, with a mandatory prison term of one year for the firearm specification associated with the charge of tampering with evidence.

{¶13} The appellant filed a timely appeal, setting forth the following assignments of error:

**{¶14}** "I. WATTS'S INDICTMENT AS TO THE WEAPONS UNDER DISABILITY OFFENSE WITH THE SPECIFICATION WAS VOID, IN VIOLATION OF THE OHIO CONSTITUTION AND R.C. 2941.11. THE TRIAL COURT REVERSIBLY ERRED IN AMENDING WATTS'S INDICTMENT AS TO THAT COUNT UNDER CRIM.R. 11(D).

**{¶15}** "II. THE INTRODUCTION OF THE FOLLOWING EVIDENCE WAS REVERSIBLY PREJUDICIAL IN WATTS'S TRIAL:

WATTS'S PRIOR SPECIFICATION, IMPROPERLY INDICTED AS A BASIS FOR HIS DISABILITY.

HIS UNINDICTED ESCAPE CONVICTION.

UNINDICTED AGGRAVATED BURGLARY CONVICTION.

ALL TESTIMONY FROM HIS POST-RELEASE CONTROL OFFICER DOUG NUTTER; WHO TESTIFIED AMONG OTHER THINGS THAT WATTS WAS UNDER PAROLE AT THE TIME OF THIS OFFENSE, WAS ON HIGH SUPERVISION, AND SMOKED MARIJUANA.

AND ALL INTRODUCED WITHOUT A 404(B) NOTICE BY THE STATE.

THE DOCTOR'S TESTIMONY, WHICH ADDUCED HEARSAY FROM OTHER DOCTORS AND NURSES, ALSO IN VIOLATION OF WATTS'S CONFRONTATION RIGHT."

**{¶16}** III. WATTS'S SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE WAS VIOLATED:

WATTS WAS PREJUDICED BY THE TRIAL COURT'S DECISION NOT TO APPOINT NEW COUNSEL WHEN WATTS DEMONSTRATED HIS SIXTH AMENDMENT RIGHT WAS VIOLATED PRIOR TO TRIAL.

WATTS'S TRIAL ATTORNEY WAS PREJUDICIALLY INEFFECTIVE AT WATTS'S TRIAL."

**{¶17}** "IV. THE EVIDENCE THAT WATTS TAMPERED WITH EVIDENCE WAS LEGALLY INSUFFICIENT, AND MANIFESTLY WEIGHED AGAINST HIS CONVICTION."

**{¶18}** "V. WATTS'S GUN SPECIFICATIONS SHOULD HAVE BEEN MERGED."

**{¶19}** For the reasons set forth below, we find the appellant's assignments of error to be without merit.

## ASSIGNMENT OF ERROR NUMBER ONE

**{¶20}** In his first assignment of error, the appellant argues that the trial court erred when it permitted the appellee to amend Count One of the indictment to base the charge of having a weapon while under disability on his previous conviction of aggravated burglary rather than aggravated robbery. We disagree.

## STANDARD OF REVIEW

**{¶21}** The appellant did not object to the trial court's decision to permit the appellee to amend the indictment. Accordingly, the issue is reviewed under a plain error analysis. To establish plain error an appellant must show that (1) an error occurred; (2) the error was plain or obvious; (3) absent the error the outcome of the proceeding would have been otherwise; and (4) reversal is necessary to correct a manifest miscarriage of justice. *State v. Quarterman*, 2014-Ohio-4034, ¶ 16.

**{¶22}** Article I, Section 10 of the Ohio Constitution provides in pertinent part that ". . . no person shall be held to answer for a capital, or otherwise infamous, crime, unless on presentment or indictment of a grand jury…," which guarantees the accused that the

indictment setting forth the charges against him will contain the essential facts constituting the offense for which he is charged and tried. Crim.R. 7 addresses indictments, and states in pertinent part:

> **(D) Amendment of Indictment, Information, or Complaint.** The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged….

**{¶23}** The case of *State v. Craft,* 2009-Ohio-675 (12th Dist.), in which the amendment of an indictment on the charge of having a weapon while under disability was discussed, is instructive. The *Craft* court stated:

> Whether or not an amendment changes the name or identity of the offense with which one is charged is a matter of law. *State v. Cooper* (June 25, 1998), Ross App. No. 97CA2326, 1998 WL 340700, at *1, citing *State v. Jackson* (1992), 78 Ohio App.3d 479, 605 N.E.2d 426. As such, we must review this issue de novo. *State v. Kittle,* Athens App. No. 04CA41, 2005-Ohio-3198, 2005 WL 1491997, ¶ 12.

> While determining whether the "name" of an offense has changed is a relatively simple undertaking, determining whether the "identity" has been changed by the amendment presents a more difficult task. Id. at ¶ 18; *State v. Davis,* Highland App. No. 06CA26, 2007-Ohio-2249, 2007 WL 1376934, ¶ 16; *State v. Smith,* Clark App. No. 2001–CA–98, 2002-Ohio-4118, 2002

WL 1833341, ¶ 9; Katz and Gianelli, Ohio Criminal Law (2007), Section 40:7. Where the "name" of the crime remains the same, even after amendment, there is no violation of Crim.R. 7(D) regarding that prohibition. See, e.g., *Davis,* 121 Ohio St.3d 239, 2008-Ohio-4537, 903 N.E.2d 609 at ¶ 5; *State v. Corrill* (1999), 133 Ohio App.3d 550, 552, 729 N.E.2d 403; *State v. Dukes,* Allen App. Nos. 1–02–64, 1–02–92, and 1–02–93, 2003-Ohio-2386, 2003 WL 21057285, ¶ 10.

In order to determine whether the identity is changed, we must determine whether the amended indictment changes the "penalty or degree" of the offense. *Davis,* 121 Ohio St.3d 239, 2008-Ohio-4537, 903 N.E.2d 609, at syllabus.

In *State v. Strozier* (Oct. 5, 1994), Montgomery County App. No. 14021, 1994 WL 567470, the Second Appellate District was faced with a similar problem when it reviewed a Crim.R. 7(D) amendment where the indictment was changed from a violation of R.C. 2923.13(A)(2) to a violation of R.C. 2923.13(A)(3). The *Strozier* court found that although the wording of the indictment was modified, the identity was not changed because it only "cured a variance between the essential facts constituting the disability and the category of disability alleged." Id. at *2. "The amendment [only] changed that category to conform to the grounds alleged to constitute the disability." Id.

*Id.* at ¶22-25.

**{¶24}** The amendment to the indictment in the case sub judice did not change the name or identity of the crime with which the appellant was charged – that is, having a weapon while under disability. The amendment served merely to correct the underlying charge which resulted in the disability from aggravated robbery to aggravated burglary. It did not change the nature of the crime with which the appellant was charged, nor did it change the way in which the defense would be prepared and presented.

**{¶25}** "Having established that the amendment did not change the name or identity of the crime charged, we now must review the trial court's decision to allow the amendment under an abuse-of-discretion standard. *State v. Beach,* 148 Ohio App.3d 181, 2002-Ohio-2759, 772 N.E.2d 677, at ¶ 23. In order to constitute reversible error, appellant must show not only that the trial court abused its discretion, but also that the amendment hampered or otherwise prejudiced appellant's defense. Id." *Craft*, *supra*, at ¶27. Thus, we review the trial court's decision to permit the appellee to amend the indictment under an abuse of discretion standard. In order to find an abuse of discretion, this court must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983).

### ANALYSIS

**{¶26}** The trial court did not abuse its discretion when it permitted the appellee to amend the indictment to correct the having a weapon while under disability due to a previous aggravated robbery charge to having a weapon while under disability due to a previous aggravated burglary charge. The amendment did not change the name and identity of the charge – having a weapon while under disability – nor did it alter the

preparation and presentation of the defense. It does not constitute plain error, nor would it be an error had the appellant's trial counsel objected to the amendment. As such, we find appellant's assignment of error number one to be without merit.

## ASSIGNMENT OF ERROR NUMBER TWO

{¶27} In his second assignment of error, the appellant argues that the trial court erred in admitting the following evidence:

- the appellant's prior specification, improperly indicted as a basis for his disability;

- the appellant's unindicted escape conviction;

- the appellant's unindicted aggravated burglary conviction;

- all testimony from the appellant's post-release control officer, Doug Nutter, who testified among other things that the appellant was on parole at the time of this offense, was on high supervision, and smoked marijuana, all of which was introduced without a 404(b) notice by the state; and,

- the doctor's testimony, which adduced hearsay from other doctors and nurses, also in violation of the appellant's confrontation right.

We disagree.

## STANDARD OF REVIEW

{¶28} The appellant failed to object to admission of the above-referenced evidence during trial and, as such, we review the issues raised in assignment of error number two for plain error. Thus, we review the record to determine whether an error occurred; whether the error was plain or obvious; whether absent the error the outcome

of the proceeding would have been otherwise; and whether reversal is necessary to correct a manifest miscarriage of justice

**{¶29}** "Decisions involving the admissibility of evidence are reviewed under an abuse-of-discretion standard of review." *Est. of Johnson v. Randall Smith, Inc.,* 2013-Ohio-1507, ¶ 22, citing *State v. Hancock,* 2006-Ohio-160. In order to find whether an error occurred  we must determine that the trial court abused of discretion; that is, was the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore, supra.*

## ANALYSIS

**{¶30}** The appellant's prior specification was not improperly indicted, and was properly before the jury as the basis for the appellant's weapons disability charge, as discussed above. Furthermore, references to his escape and aggravated burglary conviction are not plain or obvious error - had this evidence been excluded the outcome of the proceedings would have been the same, as the indictment was for having a weapon under disability; whether the crime resulting in said disability was aggravated robbery, aggravated burglary, or escape does not alter the fact that the appellant was prohibited by law from possession a firearm.

**{¶31}** Admission of the testimony of the appellant's parole officer, Doug Nutter, was likewise not plain error. Mr. Nutter testified that the appellant was on post-release control at the time of the February 23, 2023, incident, and was thus proscribed from possessing a firearm. However, the appellant, who testified against legal advice, also testified that he was on post-release control at the time of the incident. Further, Mr. Nutter's testimony regarding the appellant's use of marijuana included the fact that he

had a medical card and therefore said use did not violate the terms of his post-release control.

{¶32} Finally, Dr. Roesch testified as to his personal knowledge regarding the appellant's injuries based upon his treatment of the appellant. Dr. Roesch made passing reference to the appellant's medical records, and the nurse's notes contained therein, as he testified regarding his personal treatment of the appellant. There is no evidence that the admission of his testimony was plain or obvious error. Furthermore, the outcome of the proceedings would not have been otherwise, as the jury heard the appellant himself state to Detective Ruff that he had the gun in the waistband of his pants, fell asleep on the couch, and woke up on the floor with a burning pain in his leg. There was no plain error in the admission of Dr. Roesch's testimony, nor would it constitute an abuse of discretion to admit said testimony had the appellant objected at trial and the trial court permitted it into evidence.

{¶33} The appellant's second assignment of error is without merit and is overruled.

## ASSIGNMENT OF ERROR NUMBER THREE

{¶34} The appellant argues in assignment of error number three that his sixth amendment right to effective assistance of counsel was violated because he was prejudiced by the trial court's decision not to appoint new counsel, and because his trial counsel was prejudicially ineffective during his trial. We disagree.

### *REQUEST FOR NEW COUNSEL*

### STANDARD OF REVIEW

**{¶35}** The standard of review for requests for new trial counsel was succinctly discussed by the court in *State v. Smith*, 2021-Ohio-469 (3rd Dist.):

> The United States Constitution guarantees a criminal defendant the right to assistance of counsel for his defense under the Sixth Amendment. *State v. Lane*, 3d Dist. Union No. 14-20-04, 2020-Ohio-6798, ¶ 13, citing Ohio Constitution, Article I, Section 10. The Supreme Court of Ohio has held that in order to discharge court-appointed counsel, a defendant must show " " 'a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel." ' " *Id.*, quoting *State v. Coleman*, 37 Ohio St.3d 286, 292 (1988), quoting *People v. Robles*, 2 Cal.3d 205, 215, 85 Cal.Rptr. 166, 466 P.2d 710, 717 (1970). We review a trial court's decision as to the discharge of court-appointed counsel under an abuse-of-discretion standard. *Id.*, citing *State v. Cook*, 3d Dist. Union No. 14-10-05, 2010-Ohio-4814, ¶ 12; *Coleman* at 292; *State v. Cowans*, 87 Ohio St.3d 68, 73 (1999), citing *United States v. Iles*, 906 F.2d 1122 (6th Cir. 1990), fn. 8.

> " ' "[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate * * * rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." ' " *Id.* at ¶ 14, quoting *State v. Jones*, 91 Ohio St.3d 335, 342 (2001), quoting *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 1698 (1988). The Supreme Court of Ohio has recognized that " ' "[a]n

indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate 'good cause' to warrant substitution of counsel." ' " *Id.*, quoting *Cowans* at 72, quoting *Iles* at 1130. If the defendant's request for substitution of counsel is unreasonable, a trial judge may deny the request. *Id.*, citing *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, ¶ 148, citing *State v. Deal*, 17 Ohio St.2d 17 (1969), syllabus.

> 'Factors to consider in deciding whether a trial court erred in denying a defendant's motion to substitute counsel include "the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense." '

*Id.*, quoting *Jones* at 342, quoting *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996). " 'In evaluating a request for substitute counsel, the court must balance "the accused's right to counsel of his choice [against] the public's interest in the prompt and efficient administration of justice." ' " *Id.*, quoting *State v. Clemons*, 6th Dist. Lucas No. L-01-1445, 2002-Ohio-5906, ¶ 10, quoting *Jennings* at 148. We apply an abuse-of-discretion standard to the trial court's decision regarding the substitution of counsel. *Id.*, citing *Jones* at 343, citing *Deal* at syllabus. The abuse-of-discretion standard implies that the court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980).

*Id.* at ¶¶ 9-10.

## ANALYSIS

**{¶36}** The appellant argues that the appellant's concerns regarding his trial counsel "were not addressed by the trial court," and that the court "just proceeded to trial." A review of the record reveals that this is simply untrue.

**{¶37}** On May 8, 2023, the appellant filed a handwritten request to dismiss his trial counsel for "wrongful representation," submitting that she had not provided adequate services. On May 10, 2023, the trial court issued an Entry documenting that it had conducted a hearing on the appellant's written motion for a new attorney and oral motion to continue trial on May 9, 2023. The Entry sets forth that the trial court heard statements from the appellant and his trial counsel, and that the appellant indicated that he intended to retain Attorney Keith Edwards to represent him in the matter. The trial court granted the motion to continue the trial, and ordered the appellant's current trial counsel to continue as his counsel until he retained a new attorney.

**{¶38}** On May 18, 2023, the trial court issued another Entry in which it documented a May 17, 2023, hearing at which the status of the appellant's retention of new counsel was addressed. The Entry states that the trial court heard statements made by the appellant, and upon due consideration found that his current trial counsel shall remain. The record contains no indication that the appellant ever retained a new attorney.

**{¶39}** The appellant reasserted his complaints regarding his trial counsel on the morning of the August 24, 2023, trial, stating that he did not feel confident going into trial with her. The trial court, having already given the appellant an opportunity to obtain new

counsel, responded that she was his attorney, that the jury was waiting, and that that a trial was going to proceed.

**{¶40}** The trial court did not simply ignore the appellant's request for new counsel, but rather, continued the trial date and allowed the appellant time to engage the new counsel he told the court he had retained. The trial court did not abuse its discretion in not appointing the appellant new trial counsel upon his request on the morning of trial.

### *INEFFECTIVE ASSISTANCE OF COUNSEL*

### STANDARD OF REVIEW

**{¶41}** The appellant argues in the second part of his third assignment of error that the his trial counsel was ineffective. The standard of review for ineffective assistance of counsel was set forth in the seminal case of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and was discussed by this court in *Mansfield v. Studer,* 5th Dist. Richland Nos. 2011-CA-93 and 2011-CA-94, 2012-Ohio-4840:

> A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell* (1993), 506 U.S. 364, 113 S.Ct. 838 (1993); *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052(1984); *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

In order to warrant a finding that trial counsel was ineffective, the petitioner must meet both the deficient performance and prejudice prongs of *Strickland* and *Bradley. Knowles v. Mirzayance,* 556 U.S. 111, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251(2009).

To show deficient performance, appellant must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington,* 466 U.S. at 688, 104 S.Ct. at 2064. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland v. Washington* 466 U.S. at 687, 104 S.Ct. at 2064. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. *Strickland v. Washington* 466 U.S. at 688, 104 S.Ct. 2052 at 2065.

Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial

testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland v. Washington,* 466 U.S. 668 at 689,104 S.Ct. at 2064.

In light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland v. Washington,* 466 U.S. 668 at 689,104 S.Ct. at 2064. At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland v. Washington,* 466 U.S. 668 at 689,104 S.Ct. at 2064.

*Studer, supra,* at ¶¶ 58-61. Thus, in order to prevail on an ineffective assistance of counsel argument the appellant must establish both prongs: first, that his trial counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of an essential duty to the appellant; and second, that the appellant was prejudiced by such the alleged ineffectiveness.

**ANALYSIS**

{¶42} The appellant argues that the appellant's trial counsel was ineffective because she failed to object to the amendment of the appellant's indictment to include a new prior conviction. However, as set forth above, the amendment was not improper. Nor was the appellant's trial counsel ineffective for failing to object to the appellee's reference

to the appellant's prior aggravated burglary conviction as the basis for the having a weapon while under disability charge. It is axiomatic that the failure to object when there is no meritorious reason for such an objection does not constitute ineffective assistance of counsel.

{¶43} The appellant argues further that his trial counsel was ineffective for her failure to object to evidence regarding the aggravated burglary and escape charges, the parole officer's testimony, and the doctor's statements. As set forth above, this evidence was admissible, and her failure to object to the admissibility of admissible evidence does not provide the basis for a claim of ineffective assistance of counsel.

{¶44} Strategic assessments by trial counsel cannot provide the basis for reversal, particularly without a showing of prejudice. As set forth in *Strickland, supra,* "[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." *Id.* at 693. The fact is that the appellant made a recorded statement to Detective Ruff, heard by the jury, that he possessed the handgun, put it in the waistband of his pants at the right hip, and thereafter woke up on the floor with a burning pain in his leg and blood. He took the stand against legal advice, thus rendering his criminal history admissible for the purposes of credibility, and testified that he woke up on the floor in pain and saw a male running out the back door. The jury simply did not believe him. Instead, the jury believed the recorded statement in which he admitted to having the gun, and believed the forensic evidence that established that the bullet had traveled in an upward trajectory through the couch and into the wall.

{¶45} The appellant has failed to establish that his trial counsel's performance fell below an objective standard of reasonable representation involving a substantial violation

of any of her essential duties to the appellant. Furthermore, the appellant has failed to establish that he was prejudiced by his trial counsel's alleged ineffectiveness. Accordingly, the appellant's third assignment of error is without merit, and is overruled.

### ASSIGNMENT OF ERROR NUMBER FOUR

**{¶46}** The appellant argues in his fourth assignment of error that the evidence that Watts tampered with evidence was legally insufficient, and manifestly weighed against his conviction. We disagree.

### STANDARD OF REVIEW

**{¶47}** Sufficiency of the evidence was addressed by the Ohio Supreme Court in *State v. Worley,* 164 Ohio St.3d. 589, 2021-Ohio-2207, 174 N.E.3d 754:

The test for sufficiency of the evidence is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4, and following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). " 'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs." R.C. 2901.05(E). A sufficiency-of-the-evidence challenge asks whether the evidence adduced at trial "is legally sufficient to support the jury

verdict as a matter of law." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-

4215, 954 N.E.2d 596, ¶ 219.

*Id.* at ¶57. Thus, a review of the constitutional sufficiency of evidence to support a criminal

conviction requires a court of appeals to determine whether; after viewing the evidence

in the light most favorable to the prosecution, any rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt.

**{¶48}** Manifest weight of the evidence, on the other hand, addresses the

evidence's effect of inducing belief. *State v. Thompkins,* 78 Ohio St.3d 380, 386–387, 678

N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated*

*by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355. The Court stated:

> Weight of the evidence concerns "the inclination of the greater
>
> amount of credible evidence, offered in a trial, to support one side of the
>
> issue rather than the other. It indicates clearly to the jury that the party
>
> having the burden of proof will be entitled to their verdict, if, on weighing the
>
> evidence in their minds, they shall find the greater amount of credible
>
> evidence sustains the issue which is to be established before them. Weight
>
> is not a question of mathematics, but depends on its *effect in inducing*
>
> *belief.*" (Emphasis added.) Black's, *supra,* at 1594.

*Id.* at 387. The Court stated further:

> When a court of appeals reverses a judgment of a trial court on the
>
> basis that the verdict is against the weight of the evidence, the appellate
>
> court sits as a " 'thirteenth juror' " and disagrees with the factfinder's
>
> resolution of the conflicting testimony. *Tibbs,* 457 U.S. at 42, 102 S.Ct. at

2218, 72 L.Ed.2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720–721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

*Id.*

**{¶49}** In addition, "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

**{¶50}** "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**ANALYSIS**

**{¶51}** The crime of tampering with evidence is set forth in R.C. 2921.12, which states:

(A)     No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

(1)     Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation;

(2)     Make, present, or use any record, document, or thing, knowing it to be false and with purpose to mislead a public official who is or may be engaged in such proceeding or investigation, or with purpose to corrupt the outcome of any such proceeding or investigation.

(B)     Whoever violates this section is guilty of tampering with evidence, a felony of the third degree.

{¶52} In support of the tampering charge, the appellee presented evidence of the appellant's recorded statement to Detective Ruff admitting that he had the gun which he put into the waistband of his pants, thereafter waking up on the floor with a burning pain in his leg. The appellee presented evidence that a female voice was heard on the security camera recording following the gunshot and appellant's cries of pain, and approximately fifteen minutes passed between the time of the gunshot and the call to 9-1-1. Further, the appellee presented evidence that, with regard to the location of the gun, the appellant told Detective Ruff that he "gave it to who he gave it to and they did what they did it;" and, that the appellant "don't know where the gun is now," and that Ruff "ain't gonna find the gun."

{¶53} After viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of the crime of

tampering with evidence beyond a reasonable doubt. The appellant admitted to having the gun at the time he shot himself. The appellant knew that he was on post-release control at the time, one of the conditions of which was that he was prohibited from possessing a firearm. The trier of fact could infer from the evidence presented that the appellant was aware of the likelihood that an official proceeding may occur based upon his possession of a firearm while on post-release control. Further, the appellant told Detective Ruff that he gave the gun to who he gave it to and they did what they did, and he "ain't gonna" find the gun. The appellant's conviction on the charge of tampering with evidence is supported by sufficient evidence.

{¶54} In determining whether the tampering conviction is manifestly against the weight of the evidence, we are bound to give the jury's determination that interpretation which is consistent with, and most favorable to, sustaining the verdict and judgment. We find that a rational trier of fact could have found beyond a reasonable doubt that the appellant committed the essential elements of the crime of tampering with evidence. The jury did not clearly lose its way such that a manifest miscarriage of justice was created and a new trial necessitated. The appellant's fourth assignment of error is without merit, and is overruled.

## ASSIGNMENT OF ERROR NUMBER FIVE

{¶55} The appellant argues in his fifth assignment of error that his gun specifications should have been merged. We disagree.

## STANDARD OF REVIEW

{¶56} Appellate review of an allied-offense question is de novo. *State v. Miku*, 2018-Ohio-1584, 111 N.E.3d 558, ¶ 70 (5th Dist.), appeal not allowed, 154 Ohio St.3d

1479, 2019-Ohio-173, 114 N.E.3d 1207 (2019), quoting *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 12.

## ANALYSIS

**{¶57}** R.C. 2941.25 protects a criminal defendant's rights under the Double Jeopardy Clauses of the United States and Ohio Constitutions by prohibiting convictions of allied offenses of similar import:

(A)     Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B)     Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶58}** The application of R.C. 2941.25 requires a review of the subjective facts of the case in addition to the elements of the offenses charged. *State v. Hughes*, 2016-Ohio-880, 60 N.E.3d 765, ¶ 22 (5th Dist.) In a plurality opinion, the Ohio Supreme Court modified the test for determining whether offenses are allied offenses of similar import. *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061. The Court directed lower courts to look at the elements of the offenses in question and determine "whether it is possible to commit one offense and the other with the same conduct." (Emphasis sic). *Id*. at ¶ 48. If the answer is in the affirmative, the court must then determine whether or

not the offenses were committed by the same conduct. *Id.* at ¶ 49. If the answer to the above two questions is yes, then the offenses are allied offenses of similar import and will be merged. *Id.* at ¶ 50. If, however, the court determines that commission of one offense will never result in the commission of the other, or if there is a separate animus for each offense, then the offenses will not merge. *Id.* at ¶ 51.

{¶59} *Johnson's* rationale has been described by the Court as "incomplete." *State v. Earley*, 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, ¶ 11. The Ohio Supreme Court has further instructed courts to ask three questions when considering whether a defendant's conduct supports multiple offenses: "(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶31.

{¶60} In the case sub judice, the appellant was charged in count one of having a weapon while under disability, and in count two of tampering with evidence. Both of these counts had separate firearm specifications. These offenses were committed separately and were committed with separate animus. There is no basis upon which to merge them. Accordingly, we find that the appellant's fifth assignment of error is without merit and is therefore overruled.

**CONCLUSION**

**{¶61}** Based upon the foregoing, the appellant's Assignments of Error Numbers One, Two, Three, Four, and Five are overruled, and the judgment of the Muskingum County Court of Common Pleas is hereby affirmed.

By: Baldwin, J.

Delaney, P.J. and

Hoffman, J. concur.